# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### DAVENPORT DIVISION

| | | |
|---|---|---|
| Dora Brubaker, Thomas Blosch, Michael Stohlmeyer, individually and on behalf of all others similarly situated, | ) ) ) | No. |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| vs. | ) ) | **CLASS ACTION COMPLAINT** |
| Deere & Company, Plan Administrator and Named Fiduciary of the John Deere Health Benefit Plan for Salaried Employees; John Deere Health Benefit Plan for Salaried Employees; Plan Administrator of the John Deere Health Benefit Plan for Retired Salary and Retired Non-Union Wage Employees; Named Fiduciary of the John Deere Health Benefit Plan for Retired Salary and Retired Non-Union Wage Employees; John Deere Health Benefit Plan for Retired Salary and Retired Non-Union Wage Employees; Plan Administrator of the John Deere Pension Plan for Salaried Employees; John Deere Pension Plan for Salaried Employees; Named Fiduciary of the John Deere Pension Plan for Salaried Employees; John Deere Pension Plan for Salaried Employees; Deere & Company as Plan Administrator and Named Fiduciary of each of the Deere & Company Special Early Retirement Programs and the 2001 Construction and Forestry Division Voluntary Separation Program; the 1993 Special Early Retirement Program for Salaried Employees; Deere 1994 Special Early Retirement Program for Salaried Employees; Deere 1996 Special Early Retirement Program for Salaried Employees; Deere 1997 Special Early Retirement Program for Salaried Employees; Deere 1998 Special Early Retirement Program for Salaried Employees; Deere 1999 Special Early Retirement Program for Salaried | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Employees; Deere 2000 Special Early Retirement )
Program for Salaried Employees; Deere 2001 )
Special Early Retirement Program for Salaried )
Employees; Deere 2001 Construction and )
Forestry Division Voluntary Separation Program; )
Deere 2002 Special Early Retirement Program )
for Salaried Employees; Deere 2005 Special )
Early Retirement Program for Salaried )
Employees; Deere 2006 Special Early Retirement )
Program for Salaried Employees; Plan )
Administrator of Deere & Company Welfare )
Benefit Trust No. 2; Named Fiduciary of Deere )
& Company Welfare Benefit Trust No. 2; Deere )
& Company Welfare Benefit Trust No. 2, )
)
      Defendants. )
_____ )

## INTRODUCTION

  1.  This is a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et. seq., to restore health benefit plans, recover retiree health benefits due and to enjoin Defendants from reducing or eliminating retiree health benefits in violation of ERISA and the  terms of the relevant plans.

  2.  At pertinent times, Defendants adopted and communicated companywide policies and made uniform promises that salaried and non-union wage employees who met certain retirement eligibility requirements would vest in their right  to receive, throughout their retirement, the health, dental, vision and other medical benefits they had as active employees at the time of retirement.

2

3.     Defendants made these promises in pertinent ERISA plan documents, and in other documents and in group and individual meetings. As a result, Plaintiffs have vested rights to the promised benefits by virtue of the relevant ERISA plan documents and through enforceable representations by Defendants.

4.     On January 1, 2008, Defendants drastically reduced and/or eliminated Plaintiffs' promised benefits.

5.     Plaintiffs bring claims for preliminary and permanent injunctive, declaratory and other appropriate equitable relief and for benefits due under the plans for violation of the terms of the Plans, breach of fiduciary duty and equitable estoppel. Plaintiffs also sue for for injunctive and declaratory relief and for statutory penalties for Defendants' violation of ERISA disclosure requirements and the failure to provide plan documents and other documents and instruments relevant to Plaintiffs' claims.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e), (f), and 28 U.S.C. § 1331.

7.     Venue is proper under 29 U.S.C. § 1132(e) as Defendants may be found in the Southern District of Iowa where Deere & Company maintains numerous plants and facilities, including the Davenport Construction and Forestry Division, the Ottumwa Agricultural Equipment Division, the Des Moines Agricultural Equipment Division and the Des Moines John Deere Credit Company. Defendants have additional facilities located in Iowa, including

in Dubuque and Waterloo. Venue is also proper because numerous class members reside, the plans were administered and the breach took place in the Southern District of Iowa.

## PARTIES

8. Plaintiffs ("Plaintiffs") are former salaried and non-union wage employees of Deere & Company and/or its predecessors, subsidiaries, affiliates and participating companies (collectively, "Deere") and all persons similarly situated who retired on or after July 1, 1993 and were or are participants in one or more of the following Defendant plans and their eligible spouses and dependents: John Deere Health Benefit Plan for Salaried Employees ("Salaried Employees Plan"); John Deere Health Benefit Plan for Retired Salary and Retired Non-Union Wage Employees ("Salaried Retirees Plan"); John Deere Pension Plan for Salaried Employees ("Pension Plan"); or one of the employee benefit plans denominated a "special early retirement benefit program" provided by Deere & Company or its predecessors or subsidiaries or participating companies from 1993 through 1996 ("Deere") including, without limitation: the 1993 Special Early Retirement Program for Salaried Employees ("1993-SERP"); Deere 1994 Special Early Retirement Program for Salaried Employees ("1994-SERP"); Deere 1996 Special Early Retirement Program for Salaried Employees ("1996-SERP"); Deere 1997 Special Early Retirement Program for Salaried Employees ("1997-SERP"); Deere 1998 Special Early Retirement Program for Salaried Employees ("1998-SERP"); Deere 1999 Special Early Retirement Program for Salaried Employees ("1999-SERP"); Deere 2000 Special Early Retirement Program for

4

Salaried Employees ("2000-SERP"); Deere 2001 Special Early Retirement Program for Salaried Employees ("2001-SERP"); Deere 2001 Construction and Forestry Division Voluntary Separation Program ("2001-VSP"); Deere 2002 Special Early Retirement Program for Salaried Employees ("2002-SERP"); Deere 2005 Special Early Retirement Program for Salaried Employees ("2005-SERP"), and Deere 2006 Special Early Retirement Program for Salaried Employees ("2006-SERP"). The 1993-SERP, 1994-SERP, 1996-SERP, 1997-SERP, 1998-SERP, 1999-SERP, 2000-SERP, 2001-SERP, 2001-VSP 2002-SERP, 2005-SERP, and 2006-SERP are collectively referred to herein as, the "SERPs" and the Deere & Company Welfare Benefit Trust No. 2 ("Welfare Benefit Trust"). Hereafter, the aforementioned employee benefit plans are collectively referred to as "the Plans."

9.      Plaintiff Dora Brubaker is a resident of Johnston, Iowa. She worked for Deere from on or about November 12, 1979 until on or about October 31, 2001. Plaintiff Brubaker separated from service at the time she was employed by Deere and is currently 69 years old. Plaintiff Brubaker retired under the terms of the 2001 SERP with 22 years of service and her rights to receive lifetime health benefits vested under the Plans. Plaintiff Brubaker's vested benefits have been reduced and eliminated in violation of ERISA and the terms of the Plans. Plaintiff Brubaker is a member of and will fairly and adequately represent the Class and Subclass 2.

10.     Plaintiff Thomas Blosch is a resident of Dubuque, Iowa. He worked for Deere from on or about May 24, 1972 until on or about December 31, 2001. Plaintiff Blosch

separated from service at the time he was employed by Deere and is currently 61 years old. Plaintiff Blosch retired under the terms of the 2001 SERP with 29 years of service and his rights to receive lifetime health benefits vested under the Plans. Plaintiff Blosch's vested benefits have been reduced and eliminated in violation of ERISA and the terms of the Plans. Plaintiff Blosch is a member of and will fairly and adequately represent the Class and Subclass 2.

11.     Plaintiff Michael Stohlmeyer is a resident of East Moline, Illinois. He worked for Deere from on or about August 23, 1960 until on or about December 31, 2001. Plaintiff Stohlmeyer separated from service at the time he was employed by Deere and is currently 67 years old. Plaintiff Stohlmeyer retired under the terms of the 2001 SERP after 41 years of service and his rights to receive lifetime health benefits vested under the Plans. Plaintiff Stohlmeyer's vested benefits have been reduced and eliminated in violation of ERISA and the terms of the Plans. Plaintiff Stohlmeyer is a member of and will fairly and adequately represent the Class and Subclasses 1 and 2.

12.     The Plans are employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3).

13.     The terms of the health and medical benefit plans including the SERP plans are incorporated in the Pension Plan and as such, the Plans are both employee pension benefit plans within the meaning of ERISA, 29 U.S.C.§ 102(2) and employee welfare benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(1).

14.     The Plans were established and maintained for the purposes, *inter alia*, of providing retirement, health and medical benefits for participants and their beneficiaries, including Plaintiffs and the members of the Class.

15.     Defendant Deere is the Plan Administrator, a fiduciary and the Named Fiduciary with respect to the Salaried Employees Plan and the SERPs within the meaning of ERISA, 29 U.S.C. §§1002 (16)(A), (21)(A) and 1102 and is or was at pertinent times the Plan Administrator, the Named Fiduciary and a fiduciary with respect to each of the Plans. Deere is also the Plan Sponsor of each of the Plans within the meaning of ERISA, 29 U.S.C. § 1002(16)(B).  Deere is a manufacturer, wholesaler and retailer of agricultural, industrial and consumer products.  Deere has facilities located worldwide including numerous manufacturing, wholesale and retail facilities within the Southern District of Iowa including in the Davenport Division.  Deere employs salaried and non-union wage employees throughout its operations including at several facilities located within the Southern District of Iowa.

16.     Defendants, Plan Administrators and Named Fiduciaries of the Defendant Plans are the Plan Administrators, fiduciaries and Named Fiduciaries with respect to each of the Plans within the meaning of  ERISA, 29 U.S.C. §§ 1002 (16)(A), (21)(A) and 1102.

## CLASS ACTION ALLEGATIONS

17.     This action is commenced pursuant to Federal Rules of Civil Procedure Rule 23 as a class action.  The proposed Class is defined as:

All former salaried and non-union wage employees of Deere who retired on or after July 1, 1993 and who, at the time of retirement, were eligible to receive medical and other health benefits under one or more of the Plans, and their eligible spouses and dependents.

**Subclass 1**:  Members of the Class who were vested in the Pension Plan as of July 1, 1993 and their eligible spouses and dependents.

**Subclass 2**:  Members of the Class who retired under one of the SERPs and their eligible spouses and dependents.

18.     The Class and Subclasses are so numerous that joinder of all persons is impracticable.  Upon information and belief, there are more than 5,000 members of the Class and each Subclass has many hundreds of members.

19.     There are questions of law and fact common to the members of the Class including whether ERISA and the terms of the Plans were violated and whether participants' vested benefits were unlawfully reduced or eliminated in violation of ERISA and the terms of the Plans.

20.     This action is maintainable as a class action under Rule 23(b)(1) because inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for Defendants and adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

21.     This action is also maintainable as a class action under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and other equitable relief in favor of the Class.

22.     Alternatively, this action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## GENERAL ALLEGATIONS

23.     Upon information and belief, since approximately 1908, Deere has provided its salaried employees with various benefits including pension and other retirement benefits.

24.     At pertinent times, Defendants adopted and communicated companywide policies and made uniform promises that salaried and non-union wage employees who met certain retirement eligibility requirements and their eligible spouses and dependents, would receive throughout their lifetimes the employer subsidized medical and other health benefits that they had as active employees at the time of retirement.  Deere also promised that upon the death of a retiree, benefits would continue for the remainder of an eligible surviving spouse's lifetime.  Deere consistently tied vesting and eligibility to receive retiree medical benefits to the requirements under the Pension Plan.  Plaintiffs' rights to the promised benefits vested.

25.     Defendants consistently made these promises in pertinent ERISA plan documents, and communicated these promises through other documents and through representations made by fiduciaries and those authorized to speak on behalf of the Plans in group and individual meetings.

26.     Effective July 1, 1993, Deere adopted the term "Flexible Benefits" and advised salaried and non-union wage employees that they had the right to annually choose between benefit options and upon retirement to continue the benefits in effect upon active employment.

27.     Retiree benefits remained substantially comparable from 1993 until January 1, 2008.

28.     Upon information and belief, the percentage of Defendants' subsidies of the costs of Plaintiffs' retiree medical benefits remained substantially comparable from 1993 until January 1, 2008.

29.     At pertinent times and until January 1, 2008, available benefits during retirement were the same regardless of age with the exception that once a participant became eligible for Medicare coverage, Deere coverage continued with the Deere plans becoming secondary to Medicare. If Medicare did not cover the benefits, but they were covered under the Plans, the Plans paid the benefits.

30.     Upon information and belief, Defendants have consistently acknowledged and conceded that retiree health benefits vested under the Plans in effect prior to July 1, 1993 with respect to those salaried employees who retired prior to that date.

31.     Plaintiffs and class members who were vested and/or were eligible to retire under the terms of the Pension Plan as of July 1, 1993 have vested rights to lifetime retiree health and medical benefits.

32.     Between 1993 and 2007, Plaintiffs and Class members continued to earn vested rights to retiree health and medical benefits under the terms of the Plans, by virtue of the terms of the Plans, other documents and communications and representations made by Defendants.

33.     Between 1993 and 2007, Deere adopted the SERPs. Each SERP promised pension and retiree health benefits in exchange for an employee agreeing to accept early retirement and agreeing to sign and deliver to Deere, a "general release and covenant not to sue," a "non-competition agreement" in numerous cases, and, in numerous cases, to accept the terms of the SERP before stock options were granted thereby forfeiting the right to receive stock options. The SERPs included the binding and enforceable promise that employees retiring under the SERPs would continue to receive the same health benefits during retirement as during active employment.

34.     The promises made by the SERPs that health benefits would continue to be the same during retirement as during active employment vested under the terms of the Pension

Plan which incorporated the terms of the SERPs. Upon information and belief, all Plaintiffs who retired under any SERP have vested rights to lifetime retirement benefits by virtue of the terms of the SERPs and the terms of the pertinent Pension Plan in effect when Plaintiffs retired.

35.     At all times relevant, Deere made representations to Plaintiffs that upon their retirement, Deere would provide them, their spouses and beneficiaries with subsidized retiree health and medical benefits until they and their spouses reached age 65 at which time subsidized benefits would become secondary to Medicare benefits. Deere made these representations orally and in writing in group and individual meetings during the relevant times of Plaintiffs' employment. Deere made further representations that Plaintiffs would continue to receive the same health and medical benefits as when actively employed.

36.     In violation of Plaintiffs' vested rights and Defendants' binding promises, on January 1, 2008 Deere eliminated, reduced and dramatically altered the benefits promised under the Plans. Deere implemented radically inferior healthcare benefits and coverage in comparison to the benefits and coverage provided to Plaintiffs while working. Among the changes imposed on those under 65 and not yet eligible for Medicare, were the imposition of significantly higher deductibles for both in-network and out-of-network benefits and a significant increase in the maximum out-of-pocket expense (the co-payments required to be paid by Plaintiffs) for network benefits, compounded by the complete elimination of any maximum on the amount of out-of-pocket expenses that Plaintiffs are required to pay for

out-of-network benefits. As a result, many providers including hospitals such as the Mayo Clinic are now prohibitively expensive and completely out of reach for Class members who historically were able to receive care from such providers based on the existence of an out-of-pocket maximum expense limitation. In addition, the prescription drug benefits were dramatically reduced. No benefits are available at all until the high deductibles imposed under the new plans are met. The amount of the required drug co-payments has also increased substantially. The reductions implemented on January 1, 2008 also eliminated outright certain benefit coverages and services. To obtain such coverage one has to purchase it separately at additional expense. Benefits for chiropractic services were completely eliminated.

37. Medicare eligible Plaintiffs were eliminated from coverage under the Plans altogether. Instead, Medicare eligible Plaintiffs were told to enroll in a Medicare Advantage Plan or other plan selected by third-party insurance brokerage company, AFI, or find their own coverage. The AFI plans provided significantly inferior benefits and coverage at significantly greater cost including subjecting Class members to the risk of no prescription drug coverage at all under the Medicare Part D "doughnut hole" provisions. Coverage for dental, vision, hearing and certain other benefits that were previously covered are no longer provided and must be purchased separately at significant additional expense.

38. The Medicare Advantage Plans offered are not accepted by many of the healthcare providers from whom Plaintiffs were regularly receiving medical services. Class

members residing in certain areas cannot obtain healthcare without traveling substantial distances to a healthcare provider who has agreed to participate in one of the available Medicare Advantage Plans.

39.     Without providing notice to Plaintiffs, sometime in 2004, Deere established a separate trust materially changing the funding mechanism and benefit for Plaintiffs' healthcare in retirement.  No notice of these changes or material modifications was provided to Plaintiffs who happened to have learned of the changes by chance.

40.     Despite requests by Plaintiffs to receive and review pertinent Plan documents in effect during their employment and on the date of their retirement and governing Plaintiffs' rights to benefits, Defendants refused to produce relevant Plan documents, including Plan documents in effect at the time of Class members retirement..

41.     Despite requests by Plaintiffs to receive and review documents relevant to Plaintiffs' claims, Defendants refused to produce documents relevant to their claims.

42.     Upon information and belief, although Deere knew long before of its plan to impose changes on Plaintiffs, Deere did not notify Plaintiffs of the intended changes in healthcare coverage and benefits to go into effect on January 1, 2008, until late Fall 2007. The information provided at that time was inadequate, incomplete, confusing and untimely. Plaintiffs and Class members were forced to make hasty decisions about the continuation of their healthcare coverage and benefits based on inadequate information or face the risk that

if elections were not made by the date unilaterally imposed by Deere, all future retirees' health and medical benefits would be lost.

43.     The reduction and elimination of benefits and resulting hardships imposed on Plaintiffs were not due to any economic difficulties experienced by Deere. To the contrary, when these changes were announced, Deere was reporting four successive years of all-time record profits. It also enjoyed record stock prices. Deere's stock split 2-for-1 in December 2007, and as of April 2008 Deere's stock had more than doubled from its January 2007 price. By June 2008, Deere had increased its shareholder dividends by 155% since 2004 and repurchased $5 billion worth of its stock. Upon information and belief, in 2007, as it was announcing the reduction of retiree health benefits and creating significant hardship for Plaintiffs and members of the Class, Deere paid its CEO, Robert W. Lane, total compensation of $52.4 million, moving Mr. Lane from a ranking of 109th on Forbes' list of the highest paid CEOs to a ranking as the 24th highest paid CEO.

44.     Plaintiffs have exhausted their administrative remedies.

## COUNT I

## VIOLATIONS OF ERISA AND THE TERMS OF THE PLANS

45.     Plaintiffs repeat and reallege each and every allegation above as though fully set forth herein.

15

46.     By the acts and omissions set forth above, Defendants violated ERISA and the terms of the Plans.  As a result of Defendants' acts and omissions, Plaintiffs have been harmed.

47.     Pursuant to ERISA, 29 U.S.C. §§1132(a)(3) and 1132 (a)(1)(B), Plaintiffs and Class members are entitled to judgment in the form of an injunction and other appropriate declaratory and equitable relief, *inter alia*, enjoining Defendants to restore the Plans and benefits as they existed on December 31, 2007 and  declaring that Plaintiffs are vested in their subsidized retiree health and medical benefits provided by Defendants to Plaintiffs and their eligible spouses and dependants at the time of Plaintiffs' retirement, and ordering  that Defendants pay all benefits improperly withheld from Plaintiffs, their spouses and dependants since January 1, 2008, provide all benefits due under the terms of the Plans, and enforcing Plaintiffs' rights under the terms of the Plans, and clarifying  their rights to future benefits under the terms of the Plans, together with  prejudgment interest and attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund and granting Plaintiffs all other  relief demanded in the Complaint, and such other and further relief as the Court deems equitable and just.

## COUNT II

## BREACH OF FIDUCIARY DUTY

48.     Plaintiffs repeat and reallege each and every allegation above as  though fully set forth herein.

49.     ERISA, 29 U.S.C. § 1132(a)(3), permits a participant or beneficiary to bring suit to enjoin any act or practice that violates any provision of ERISA or the terms of the Plan, or to obtain other appropriate equitable relief to address such violations or to enforce any provisions of ERISA.

50.     ERISA, 29 U.S.C. § 1104, requires that fiduciaries discharge their duties with respect to the Plans solely in the interest of participants and beneficiaries and (1) for the exclusive purpose of providing benefits to participants and their beneficiaries and (2) defraying reasonable expenses of administration, (3) with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, and (4) in accordance with the documents and instruments governing the Plan.

51.     ERISA requires fiduciaries to comply with the common law duty of loyalty including the obligation to deal fairly and honestly with employees and retirees and to refrain from mis-communicating and misleading plan participants about material matters. ERISA fiduciaries also have an affirmative duty to inform if silence can be harmful or if the fiduciary knows or should know that participants are laboring under a material misunderstanding.

52.     At pertinent times, Defendant failed to provide complete and accurate information regarding its plans and intentions to reduce or eliminate benefits or the possibility of reducing or eliminating the Plans and Plan benefits and materially

misrepresented, misled, and failed to inform Plaintiffs that their benefits would be reduced or eliminated or that plans to do so were under serious consideration.

53.     By engaging in the foregoing and by their related acts and omissions, Deere and the other Defendant fiduciaries and those acting on their behalf breached their fiduciary duties to Plaintiffs.

54.     As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiffs have been harmed.

55.     Pursuant to ERISA, 29 U.S.C. §§1132(a)(2) and (3), and §1104(a)(9), Plaintiffs and Class members are entitled to judgment in the form of an injunction and other appropriate declaratory and equitable relief, *inter alia*, enjoining Defendants to restore the Plans and benefits as they existed on December 31, 2007 and declaring that Plaintiffs are vested in their subsidized retiree health and medical benefits provided by Defendants to Plaintiffs, their eligible spouses and dependants at the time of Plaintiffs' retirement; ordering Defendants to render an accounting and disclose to Plaintiffs all profits attributable to the elimination or reduction of retiree benefits, and directing Defendants to disgorge for the benefit of the Plans and Plaintiffs all profits attributable to the elimination or reduction of retiree benefits; enjoining Defendants to restore to the plans any losses to the Plans resulting from their breaches, and ordering that Defendants pay all benefits improperly withheld from Plaintiffs, their spouses and dependants since January 1, 2008, together with prejudgment interest and attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common

fund, and granting Plaintiffs all other relief demanded in the Complaint, and such other and further relief as the Court deems equitable and just.

## COUNT III

## EQUITABLE ESTOPPEL UNDER FEDERAL COMMON LAW

56.     Plaintiffs repeat and reallege each and every allegation above as though fully set forth herein.

57.     Upon information and belief, at pertinent times when Deere and its agents made representations to Plaintiffs regarding their rights to continue to receive health and medical coverage and benefits in retirement, Deere was aware that it intended to or was seriously considering terminating, reducing or eliminating subsidized retiree medical benefits under the Plans without making such disclosures to Plaintiffs.

58.     Deere intended that Plaintiffs rely upon such representations regarding the coverage and benefits levels of retiree health and medical benefits under the Plans in choosing whether and when to retire from active employment.  Deere made these representations, *inter alia*, to encourage Plaintiffs to retire at times when they otherwise would not have chosen to do so.  These representations were made by a number of means including, but not limited to, published pamphlets, letters, group meetings, individual benefit related meetings, and in presentations to Plaintiffs so as to give Plaintiffs reasons to believe that Deere's representations were to be relied upon.

59.    Plaintiffs at no time had any awareness of Deere's decision to terminate or modify or eliminate coverage and benefit levels before the Fall of 2007.

60.    Plaintiffs reasonably relied on the representations made by Deere in considering their employment with Deere, accepting early retirement, taking or refraining from taking other actions related to their employment, terminating or foregoing alternate medical coverage and other acts of reliance.

61.    Plaintiffs have been injured by their reliance on Deere's representations and statements in that following their retirement, Deere has eliminated, reduced or terminated retiree medical benefits, coverage or benefit levels forcing Plaintiffs to incur substantially increased out-of-pocket expenses to maintain benefit coverage, seek coverage at higher costs or forego medical treatment altogether.

62.    Significant injustice will result if Deere is not required to adhere to the promises  and representations made to Plaintiffs.

63.    Plaintiffs are entitled to an order rewarding equitable relief and declaring that Plaintiffs and their eligible spouses and dependants are entitled to the benefits and Plans in effect when they retired  until Plaintiffs become Medicare eligible and that thereafter, all benefits shall continue as before with Medicare becoming primary and the Plans becoming secondary as was provided to Plaintiffs on December 31, 2007, together with an award of attorneys' fees and costs pursuant to 29 U.S.C. §1132(g) and/or the common fund, and

granting Plaintiffs all other relief demanded in the Complaint, and such other and further relief as the Court deems equitable and just.

## COUNT IV

## <u>VIOLATIONS OF ERISA DISCLOSURE REQUIREMENTS, CLAIMS PROCEDURE REQUIREMENTS AND APPLICABLE REGULATIONS</u>

64.     Plaintiffs repeat and reallege each and every allegation above as though fully set forth herein.

65.     ERISA, 29 U.S.C. §§ 1020 and 1021 provide that a summary plan description shall be furnished to participants and beneficiaries.  The summary plan description must be reasonably comprehensive and accurate to apprise participants of their rights and obligations under the plan.

66.     Section 104 of ERISA, 29 U.S.C. § 1024 provides in part:

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan

Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title--
(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
(B) if later, within 120 days after the plan becomes subject to this part.
. . .
If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is

21

adopted to each participant, and to each beneficiary who is receiving benefits under the plan.

67.     ERISA, 29 U.S.C. §1024(b)(4), provides in pertinent part:

(a) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated . . . .

68.     ERISA, 29 U.S.C. § 1133 and applicable regulations require that the plan administrator provide to all claimants upon request and free of charge reasonable access to and copies of all documents, records and information relevant to a claim for benefits, an appeal from denial of a claim for benefits and denial of an appeal.

69.     ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, . . . each violation described in subparagraph (b) with respect to a single participant or beneficiary, shall be treated as a separate violation.

70.     Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in 29 U.S.C. §1132(c)(1)(B) was increased to $110.  29 C.F.R. § 2575.502©)(1) states in pertinent part that: "The maximum amount of the civil

monetary penalty established by Section 502©)(1) of . . . ERISA [has been] increased from $100 a day to $110 a day."

71.     By the acts and omissions set forth above, Defendants violated ERISA's disclosure requirements, claims procedure requirements and applicable regulations.  As a result of Defendants' acts and omissions, Plaintiffs have been damaged and their rights to benefits under the Plans, and to pursue their claims for benefits under the Plans, have been thwarted, prejudiced and delayed.

72.     Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(3) and (c)(1)(B), Plaintiffs and Class members are entitled to injunctive and other equitable relief to redress Defendants' disclosure and claims procedure violations and to civil monetary penalties of $110 for each day for each separate violation.

WHEREFORE, Plaintiffs pray that the Court enter appropriate orders and judgment in favor of Plaintiffs, granting them the following relief:

A.     Preliminarily and permanently enjoining Defendants to restore the Plans and benefits as they existed for Plaintiffs on and prior to December 31, 2007;

B.     Preliminarily and permanently enjoining Defendants from reducing coverage and benefit levels for health and medical benefits below the level provided to Plaintiffs on and prior to December 31, 2007;

C.    Reforming the Plans to provide that said benefits shall not be reduced or terminated to levels less than those promised Plaintiffs and provided to them on and before December 31, 2007;

D.    Directing Defendants to account for and disclose all profits attributable to the elimination, reduction or termination of Plaintiffs' benefits and directing Defendants to disgorge any and all profits attributable to the elimination, reduction or termination of Plaintiffs' benefits;

E.    Declaring that Plaintiffs' benefits are vested and that they are entitled to receive throughout their lifetimes the same subsidized health and medical benefits they had at the time of their retirement;

F.    Ordering that Defendants pay all benefits that were due or would have become due or that were improperly withheld from Plaintiffs under the terms of the Plans and all benefits as in effect on December 31, 2007 and making Plaintiffs whole for any and all losses caused by the conduct complained of herein;

G.    Enjoining Defendants to comply with ERISA's disclosure and claims procedure requirements and assessing civil penalties against Defendants of $110 for each day for each separate violation that Defendants refused to provide Plan documents and instruments requested by Plaintiffs;

H.    Awarding Plaintiffs their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or under the common fund, and

I.    Granting Plaintiffs such other and further relief as the Court deems equitable

and just.

Respectfully submitted this 10th day of September 2008.

**EARL A. PAYSON, P.C.**


By:____/s/ Earl A. Payson_____
        Earl A. Payson
        Earl A. Payson, P.C.
        1313 Harrison Street
        Davenport, IA 52803
        Telephone: (563) 323-8054
        Facsimile: (563) 323-9112
        eappc@aol.com

        Attorney for Plaintiffs