**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| Dora Brubaker, Thomas Blosch, Michael Stohlmeyer, Janet Harville, Mark Mulvehill, Diana Nielson, R. Ronald Nichols, Judith Puls, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.  3:08-CV-113 |
| Deere & Company, et al., | **DEFENDANTS' TRIAL BRIEF** |
| Defendants. | |

On the Brief:

Frank Harty
Debra L. Hulett
Angel A. West
NYEMASTER, GOODE, WEST, HANSELL & O'BRIEN, PC
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899

Charles C. Jackson (*admitted pro hac vice*)
Sari M. Alamuddin (*admitted pro hac vice*)
Amy M. Foran (*admitted pro hac vice*)
Stephanie L. Sweitzer (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094

James P. Walsh, Jr. (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.    PLAINTIFFS' CLASS CLAIM FOR VESTED BENEFITS UNDER THE SALARIED
      HEALTH PLAN (COUNT I) FAILS AS A MATTER OF LAW ................................... 3

   A.    The Controlling Plans And SPDs Unambiguously Reserve To Deere The Right To
             Amend, Modify Or Terminate The Terms of The Salaried Health Plan .................... 3

   B.    Members Of Subclass 1 Who Were Eligible To Retire Prior To July 1, 1993 Did Not
             Have "Vested" Medical Benefits ............................................................................ 6

     1.    The Pre-July 1, 1993 SPDs Are Not The Operative Plan Documents ......................... 6

     2.    The Pre-1993 SPDs Unambiguously Reserve To Deere The Right To Amend, Modify
                   Or Terminate The Salaried Health Plan .................................................................. 9

   C.    Extrinsic Evidence Will Confirm That Deere Always Has Maintained The Right To
             Amend, Modify Or Terminate The Salaried Heath Plan And, In Fact, Has Amended
             The Plan Annually Since 1993 ................................................................................ 11

II.   PLAINTIFFS' CLASS CLAIM FOR VESTED BENEFITS UNDER THE SERPS
      (COUNT I) ON BEHALF OF SUBCLASS 2 ALSO FAILS ....................................... 13

   A.    The Plan Provisions Comprising The SERPs Are Incorporated Into The Salaried
             Pension Plan, Do Not Reference Retiree Health Benefits, And Are Subject To The
             Salaried Pension Plan's Explicit Reservation Of Rights Provision ........................... 13

   B.    Even If The SERPs Are Separate Plans, They Do Not Promise Lifetime Or Vested
             Benefits ................................................................................................................. 17

III.  PLAINTIFFS' INDIVIDUAL CLAIMS FOR BREACH OF FIDUCIARY DUTY
      UNDER ERISA (COUNT II) FAIL AS A MATTER OF LAW BECAUSE THERE IS
      NO EVIDENCE THAT DEERE "CONCEALED" THE HEALTHY DIRECTIONS
      CHANGES OR MADE MATERIAL MISREPRESENTATIONS ON WHICH
      PLAINTIFFS REASONABLY RELIED TO THEIR DETRIMENT ............................ 18

   A.    Deere Did Not "Conceal" The Healthy Directions Changes From Plaintiffs ............ 18

     1.    Plaintiffs Retired Long Before Deere Gave "Serious Consideration" To The Healthy
                   Directions Changes ............................................................................................... 18

     2.    Deere Timely Provided Details Of The Healthy Directors Changes When They
                   Became Known ...................................................................................................... 20

   B.    Plaintiffs Cannot Establish That Deere Made Any Other Misrepresentations Related
             To Retiree Health Benefits ...................................................................................... 21

   C.    Plaintiffs Could Not Have Reasonably Relied On Any Alleged Misrepresentations . 25

IV.   PLAINTIFFS' INDIVIDUAL ESTOPPEL CLAIMS (COUNT III) FAIL AS A
      MATTER OF LAW BECAUSE THE TERMS OF THE PLANS ARE CLEAR AND
      UNAMBIGUOUS, AND BECAUSE ANY RELIANCE BY PLAINTIFFS ON ANY
      ORAL OR WRITTEN STATEMENTS WHICH CONTRADICT THE PLAN TERMS
      WAS UNREASONABLE ........................................................................................ 27

# TABLE OF CONTENTS

**Page**

V.   THE EVIDENCE PRESENTED AT TRIAL WILL NOT SUPPORT PLAINTIFFS' CLAIM FOR VIOLATION OF ERISA SECTIONS 104(B) AND 503 FAIL (COUNT IV) ................................................................................................ 29

  A.   Deere Complied With The Disclosure Requirements Of ERISA Section 104(b) And, Therefore, Plaintiffs' Claim For Violation Of This Provision Fails. ......................... 29

    1.   Deere Provided Plaintiffs With All Required Documents Pursuant To ERISA Section 104(b)(4) ................................................................................................ 29

    2.   Deere Timely Disclosed Information Regarding Healthy Directions Pursuant To ERISA Section 104(b)(1)(B) ................................................................................ 32

    3.   The Sanctions Prescribed By Section 1032 Are Inappropriate Because Deere Complied In Good Faith With The Disclosure Requirements Of Section 104(b) ...... 34

  B.   Deere Did Not Violate ERISA's Claims Procedure Requirements ........................... 35

    1.   The Plan Administrator's Determination That Plaintiffs Had Not Made A Claim Under The Salaried Health Plan Was Neither Arbitrary Nor Capricious ................. 35

    2.   Plaintiffs Were Afforded A Full And Fair Review Of Their "Claim." ..................... 38

    3.   Plaintiffs Are Not Entitled To Damages In Any Event ............................................ 39

CONCLUSION .................................................................................................. 40

Defendants, Deere & Co. et al ("Deere") by their attorneys and pursuant to Fed. R. Civ. P. 16, respectfully submit their Trial Brief.

## INTRODUCTION

On September 10, 2008, plaintiffs filed the original complaint in this action, alleging claims for breach of contract (Count I), breach of fiduciary duty (Count II), estoppel (Count III) and disclosure violations under the Employee Retirement Income Security Act of 1974 ("ERISA") (Count IV).  The claims arose out of Deere's amendment of the retiree health benefit provisions contained in the John Deere Health Benefit Plan for Salaried Employees ("Salaried Health Plan"), effective January 1, 2008.

On October 16, 2008, plaintiffs filed a motion for preliminary injunction.  On December 8, 2008, the Court denied plaintiffs' motion, holding that: "The Summary Plan Document (SPD) and complete contract documents in effect when plaintiffs retired and thereafter contain reservations of rights language that seems to permit defendants to make the plan changes they have made from time to time." (Docket No. 83 at 2-3).

On December 26, 2008, the Court certified a class and two subclasses with respect to Counts I and IV of the complaint.  (Docket Nos. 91, 95).  Subclass 1 consists of all former salaried and non-union employees who retired on or after July 1, 1993, "who had five years or more of service and/or who were eligible to retire under the [John Deere Pension Plan for Salaried Employees ("Salaried Pension Plan")] as of July 1, 1993 and their eligible spouses and dependants."  (Docket No. 91). Subclass 2 is defined as all former salaried and non-union employees who retired on or after July 1, 1993, "who retired under one of the [Supplemental Early Retirement Programs ("SERPs")] and their eligible spouses and dependents."  *Id.*  To date, this Court has not ruled on plaintiffs' motion to certify the class as to Count II of the complaint.  Plaintiffs did not move to certify a class as to Count III.  *Id.*

On June 3, 2009, plaintiffs amended their complaint to add five class representatives. (Docket No. 145).   On July 3, 2009, Deere filed a motion to dismiss Count IV of plaintiffs' amended complaint.  (Docket No. 152).  On July 17, 2009, the parties filed cross motions for partial summary judgment with respect to the remaining claims (Docket Nos. 156, 158).  The Court heard oral argument on all dispositive motions on August 4, 2009.  On August 21, 2009, the Court denied the parties' cross motions for summary judgment, permitting all four of plaintiffs' claims to proceed to trial.  (Docket No. 186).

The evidence presented at trial will confirm that the controlling Plan documents, including the Salaried Health Plan, the Salaried Pension Plan and the applicable Summary Plan Descriptions ("SPDs"), unambiguously reserved to Deere the right to change benefits as it deems appropriate. Although there is no need resort to extrinsic evidence, that evidence, including the understanding of Plan fiduciaries, Deere's constant review of and changes to the Plans, annual correspondence to participants and even plaintiffs' own testimony, also will underscore Deere's right to change the Plans.  Thus, plaintiffs' claim in Count I for "vested" medical benefits fails.

The evidence also will confirm that plaintiffs' second contractual theory – that those retirees who retired under one of Deere's SERPs had vested benefits – is unsupported in law or fact.  The SERPs are not "stand-alone" medical plans, as plaintiffs contend.   Rather, the SERPs were specifically incorporated into the Salaried Pension Plan.  On their face, the SERPs say nothing about medical benefits at all.  The Salaried Pension Plan, in turn, specifically incorporates the Salaried Health Plan's reservation of rights clause ("ROR") as to health benefits.  Finally, the correspondence surrounding the SERPs did not promise plaintiffs vested medical benefits.

The evidence at trial also will refute the individual claims asserted by plaintiffs Brubaker, Blosch and Stohlmeyer for breach of fiduciary duty (Count II) and estoppel (Count III).  Plaintiffs will be unable to show that Deere "concealed" the Healthy Directions changes or otherwise made

material misrepresentations, much less that plaintiffs reasonably relied on such alleged misrepresentations to their detriment.  To the contrary, Deere provided notice of the impending changes to all retirees in October of 2005, more than two years prior to the effective date of Healthy Directions.  Further, plaintiffs knew that their benefits were subject to, and in fact did, change and that Deere always reserved the right to terminate, amend or modify retiree health benefits.  Plaintiffs' reliance on any alleged representations to the contrary is unreasonable as a matter of law.

Finally, the evidence presented at trial will demonstrate that Deere complied with ERISA's statutory disclosure requirements.  Thus, plaintiffs' claims under ERISA Sections 104(b) and 503 will fail.

For the reasons set forth below, judgment should be granted in favor of Deere and against plaintiffs.

## ARGUMENT

I.   **PLAINTIFFS' CLASS CLAIM FOR VESTED BENEFITS UNDER THE SALARIED HEALTH PLAN (COUNT I) FAILS AS A MATTER OF LAW.**

A.   **The Controlling Plans And SPDs Unambiguously Reserve To Deere The Right To Amend, Modify Or Terminate The Terms of The Salaried Health Plan.**

Although pension plans are subject to ERISA's mandatory vesting requirements, "welfare plans are not."  *Hughes v. 3M Retiree Medical Plan*, 281 F.3d 786, 791 (8th Cir. 2002); *see also* 29 U.S.C. § 1053; *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).  "An employer offering welfare benefits may unilaterally modify or terminate benefits at the employer's discretion, so long as the employer has not contracted an agreement to the contrary."  *Id.*  (citation omitted).  Further, vesting is "not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language." *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (*en banc*) (internal quotations omitted); *see also Jensen v. Sipco, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994) (promise to provide vested benefits must be "incorporated, in some

fashion, into the formal written ERISA plan"); *Anderson v. Alpha Portland Indus. Inc.*, 836 F.2d 1512, 1517 (8th Cir. 1988) (vesting requires a specific expression of the employer's intent to be bound), *cert. denied*, 489 U.S. 1051 (1989). "Plaintiffs have the burden of proof as to whether vesting language exists in order to confer a vested right to employee welfare benefits." *Hughes*, 281 F.3d at 791 (citing *Anderson*, 836 F.2d at 1516-17)*; see also Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1345 (8th Cir. 1997) ("ERISA does not require that welfare benefits vest, and the burden is on the claimant to show that his welfare benefits had vested under the terms of the plan."). Plaintiffs cannot meet this burden of proof.

The Salaried Health Plan, Salaried Pension Plan and SPDs, in their current form and in previous iterations since July 1, 1993, have unambiguously reserved to Deere the right to terminate, modify or amend the Plans without limitation.  (Docket No. 156-3 ¶¶ 26-28; Docket No. 83 at 2-3). The ROR language is unqualified and does not limit Deere's ability to modify retiree health benefits.  (Docket No. 156-3 ¶¶ 50, 55).

The recent Eighth Circuit decision relied upon by plaintiffs, *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872 (8th Cir. 2009), is factually distinguishable.  In *Halbach*, the ROR language contained an explicit qualification on its application, stating:

> The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an officer of the Company; *provided, however, that no such modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment*."

*Id.* at 874 (emphasis added).  The Court found that the "provided, however" portion of the provision made the ROR clause ambiguous.

No such qualifying language is present here.  To the contrary, the operative SPDs always have stated:

Deere & Company reserves the right to suspend or terminate the Plan; to modify the Plan to provide different cost-sharing between the company and participants; and to amend the Plan in any respect. Changes may occur at any time

\* \* \*

All statements in this book, the official Plan documents, and all representations by the company or its personnel are subject to this right of amendment, modification, suspension or termination. *These rights apply without limitation, even after an individual's circumstances have changed by retirement or otherwise.*

Plan benefits do not become vested except as provided under the Pension Plan and the Savings and Investment Plan, and then only to the extent specifically provided in the Plan documents for the Pension Plan and Savings and Investment Plan.

(Docket No. 156-3 ¶ 26) (emphasis added).

As plaintiffs correctly point out, "[i]f the plan documents are clear, [that is] the end of the inquiry." (12/5/08 Tr. at 298; Docket No. 156-4 at 25); *see also Crown Cork & Seal Co., Inc. v. Int'l Assoc. of Machinists and Aerospace Workers, The AFL-CIO*, 501 F.3d 912, 918 (8th Cir. 2007) (a "blanket [ROR] to Crown to unilaterally modify or terminate the retiree health plans, set forth in the Retiree Health Benefits Plan…is fatal to any vesting argument"); *Stearns v. NCR Corp.*, 297 F.3d 706, 711-12 (8th Cir. 2002) ("an unambiguous [ROR] provision is sufficient without more to defeat a claim that retirement welfare plan benefits are vested") (citing *Hughes*, 281 F.3d at 792-93) (ROR provision in plan "devoid of vesting language" defeats vesting claim); *Hutchins*, 110 F.3d at 1345-1346 (where the plan specifically gave the employer the authority to modify or terminate the plan, benefits did not vest); *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*, 961 F.2d 1384-85 (8th Cir. 1992) (unambiguous [ROR] clause and "absolutely nothing in the plan to contradict or cloud [its] plain and obvious meaning" defeats vesting claim); *see Anderson*, 836 F.2d at 1514, 1519 (plan provision that retirement health benefits "may now or hereinafter be amended, modified or supplemented in collective bargaining" inconsistent with vesting).

Because the Plan language is unqualified and unambiguous, plaintiffs' claim for contractual vesting necessarily fails and there is no need to resort to extrinsic evidence. *See Stearns*, 297 F.3d at 712 (a court only may consider extrinsic evidence "[i]f a [ROR] provision is facially ambiguous, or if it conflicts with other plan provisions"); *Hughes*, 281 F.3d at 790 (when interpreting ERISA plan documents, extrinsic evidence "is admissible if the language of the plan provision at issue is ambiguous") (citations omitted); *Crown Cork & Seal Co., Inc.*, 501 F.3d at 918 (language in plan stating that health benefit coverage "continues until your death". . ."is not explicit vesting language, and in any case, it is inconsistent with the [ROR] clause…which controls"); *Bublitz v. E.I. duPont de Nemours & Co.*, 171 F. Supp. 2d 906, 912 (S. D. Iowa 2001) ("extrinsic evidence may not be used to create an ambiguity" in a plan subject to ERISA) (citations omitted); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3rd Cir. 1995) ("The retirees' interpretation of the plans as providing lifetime benefits is not reasonable as a matter of law because it cannot be reconciled with the unqualified [ROR] clauses in the plans"); *Leannah v. Alliant Energy Corp.*, 607 F. Supp. 2d 946, 955 (E.D. Wisc. 2009) ("broad [ROR] clauses disambiguate any seeming ambiguity as to the intention to vest early retiree or surviving spouse benefits"); *Windstream Corp. v. Berggren*, Case No. 4:08-CV-3173, 2009 WL 2824767, at *16 (D. Neb. Aug, 26, 2009) ("Because the meaning of the [ROR] clause is not ambiguous when additional plan language is taken into account, extrinsic evidence concerning the settlor's intent to vest welfare benefits cannot be considered") (citations omitted).

**B.      Members Of Subclass 1 Who Were Eligible To Retire Prior To July 1, 1993 Did Not Have "Vested" Medical Benefits.**

**1.      The Pre-July 1, 1993 SPDs Are Not The Operative Plan Documents.**

Recognizing that the operative Plan documents doom their case, plaintiffs contend that employees who were eligible to retire prior to July 1, 1993, but who did not retire until after that date (*i.e.*, the members of Subclass 1), had vested medical benefits based on promises of lifetime

benefits contained in the pre-1993 SPDs.  (Docket No. 158-2 at 1).  Plaintiffs are wrong on the law and the facts.

By definition, all of the Flex Retirees retired after July 1, 1993.  Docket No. 161-3 ¶24.  As the Court pointed out, and as Deere's former Manager of Benefits Patricia Van Bruwaene will testify, the governing Plan documents are the "[SPD] and complete contract documents in effect when plaintiffs retired. . . ."  (Docket No. 83 at 2; Docket No. 156-3 ¶ 23); *Jensen*, 38 F.3d at 949. ("[T]he question is whether Plan 1006 and Plan 1017 conferred vested benefits on class members *who retired under those Plans*. Plaintiffs have the burden of proof on that issue") (emphasis added); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1009 (6th Cir. 2009) (eligibility for health benefits in retirement is determined at the time an employee retires, not when the employee becomes eligible to retire); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 936-37 (5th Cir. 1993) (failure to include ROR in 1977 and 1980 SPDs followed by explicit ROR in 1985 SPD does not bar 1986 modification of benefits as to post-1985 retirees).  Thus, the post-1993 Plan documents, not the pre-1993 SPDs, govern plaintiffs' claims.  Because the *operative* Plan documents indisputably reserve to Deere the unqualified right to make benefit changes (*see* Docket No. 161-2 ¶¶1-20, Docket No. 161-3 ¶¶ 25-33), plaintiffs' contractual vesting claim does not even get off the ground.

The fact that some members of Subclass 1 may have been "eligible" to retire under the Salaried Pension Plan before July 1, 1993 is irrelevant.  The only provision in the Salaried Pension Plan discussing health benefits is Article IX, which provides that:

> *The terms and any amendments of the terms of a Medical Plan affecting its cost, conditions of eligibility, or other matters relating to the provisions of this Plan shall automatically be incorporated into this Plan.*  Moreover, the ability of the Company or any participating Subsidiary to amend or terminate a Medical Plan at any time shall be determined under the provisions of the Medical Plan.

(Docket No. 156-3 ¶ 23) (emphasis added).

Thus, because eligibility for medical benefits is determined by the Salaried Health Plan, which expressly provides that medical benefits do not vest, plaintiffs had no contractual vested right to medical benefits prior to 1993. *See In re Lucent Death Ben. ERISA Litig.*, 541 F.3d 250, 255 (3rd Cir. 2008) ("The fact that a welfare benefit appears in a larger plan that also provides pension benefits does not change the character of that welfare benefit") (citing *Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193-94 (2d Cir. 2000)); *Schreiber, et al. v. Phillips Display Components Co.*, 2007 WL 3036743 (E.D. Mich. Oct. 16, 2007) (ROR clauses that unambiguously reserve right to amend or terminate plan not rendered ambiguous because eligibility for retiree medical benefits tied to eligibility for pension benefits).

This scenario is similar to the one presented in *Winnett v. Caterpillar, Inc.*, *supra*, where the plaintiffs asserted that the following plan language vested benefits:

> Coverage . . . shall be provided without cost to any such retired Employee . . . [and] will be provided after his retirement from active service for a retired Employee if he has at least 5 years of credited service under the Non-Contributory Pension Plan at his retirement and is eligible for the immediate commencement of a monthly pension under the Non-Contributory Pension Plan or would be eligible for such immediate commencement but for his election to defer commencement of his pension. Coverage shall take effect on his retirement date.

553 F.3d at 1009.  The Sixth Circuit held that "[t]his language cannot be reasonably interpreted to explicitly state that benefits vested as soon as a worker became eligible for a pension or to retire," stating that the phrase "shall be provided" refers to "'retired employees,' – not to current employees who might retire in the future." *Id.*  The court found that eligibility for health benefits in retirement is determined at the time an employee retires, not when the employee becomes eligible to retire. *Id.; see also Windstream*, *supra* at 12-13 (court held that plan language stating that welfare benefits "may be continued through your retirement providing you have at least 15 years of Net Credited Service prior to age 65" not indicative of vesting; rather, it "merely sets the criteria for eligibility for

benefits"); *Temme v. Bemis Co., Inc.*, Case No. 08-CV-090, 2009 WL 2750678, at *10 (E.D. Wisc. Aug. 26, 2009) (court held that language regarding eligibility for retiree medical benefits "merely guarantees that particular qualifying individuals will be eligible for the retiree employee benefit while it is offered.  It does not promise that such a benefit will *always* be offered") (emphasis in original).

The same is true here.  Plaintiffs' eligibility for retiree health benefits is governed by the terms of the Plans in effect when each plaintiff retired.  Those Plans contain unambiguous ROR provisions.  Thus, plaintiffs' claim for contractual vesting fails as a matter of law.

> ### 2. The Pre-1993 SPDs Unambiguously Reserve To Deere The Right To Amend, Modify Or Terminate The Salaried Health Plan.

Even if the pre-July 1, 1993 SPDs governed plaintiffs' claims, the "coverage" provisions upon which plaintiffs rely are not "clear and express" evidence of an intent to vest benefits.  (*See, e.g.,* Docket No. 161-2 at ¶3 ("… coverage for your dependants may be continued …"), ¶8 ("You take your coverage with you when you retire."), ¶19 ("Coverage continues . . .)).  Where, as here, such language is accompanied by a ROR provision, the plan sponsor retains the unqualified right to change the plans as a matter of law.  *See Crown Cork & Seal Co., Inc.*, 501 F.3d at 918  (language in SPD stating that "'[y]our personal coverage continues until your death' … is not explicit vesting language, and in any event, it is inconsistent with the [ROR]"); *Anderson*, 836 F.2d at 1519 (holding that an employer's promise to future retirees that benefits "will continue" could not be read as a promise of vested lifetime benefits); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1085-86 (10th Cir. 2004) (holding plaintiff could not establish contractual vesting by "clear and express" language where SPD had ROR language and coverage provision promised benefits until "the date the insured dies"); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1071 (11th Cir. 2004) (plan language stating that benefits "will continue ... after ... age 65" was insufficient to establish vesting); *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806, 810, 815 (7th Cir. 1992)

(language that the company "will continue" to pay premiums does not create an ambiguity as to vesting).

For example, the 1977 SPD provides: "The Company reserves the right to amend, modify or terminate this plan at any time – even though plan termination is considered unlikely." (Docket No. 161-2 ¶¶ 2,4). Similarly, the SPDs provided to Plan participants in 1984 and 1987 explicitly state:

> Deere & Company may at any time amend, modify, or terminate the Plan, provided however, that no change shall reduce the amount of any benefit to which an employee, retired employee, or beneficiary shall be entitled with respect to claims incurred prior to the effective date of such change.

(Docket No. 161-2 ¶¶9, 12). Much as plaintiffs would wish otherwise, the ROR provisions cannot be written out of the Plan documents. *DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 816 (8th Cir. 1988) (holding that "[e]ach provision should be read consistently with the others and as part of an integrated whole. Further, the terms must be construed so as to render none of them nugatory and to avoid illusory promises.") (citation omitted), *vacated and remanded on other grounds, sub nom. DeGeare v. Slattery Group, Inc.*, 489 U.S. 1049 (1989).

Plaintiffs misleadingly state that the "reservation provision Defendants rely on is located before the provisions dealing with retiree benefits." (Docket No. 158-2 at 14). In fact, the ROR language appears *after* a retiree medical coverage provision cited by plaintiffs, and on the *same* page. (Docket No. 158-15 at ¶7; Docket No. 72-5 at 34). Another retiree medical coverage provision, which appears before the ROR provision, merely "directs" readers to a provision in the SPD that discusses Medicare coverage in more detail. (Docket No. 158-15 at ¶¶6, 8). Moreover, the ROR provision expressly applies to "the Plan" – there is no carve-out for retiree medical benefits or any other benefit for that matter. These are hardly "obscure provisions unlikely to be seen or understood by a layman." (Docket No. 158-2 at 15).

In short, Deere did not revoke any contractual vesting promises and no ambiguity exists when the Plan documents are read as a whole. *Anderson*, 836 F.2d at 1519 ("When interpreting a contract we must not interpret one provision inconsistently with another"); *see also supra* at 5-6.

### C.    Extrinsic Evidence Will Confirm That Deere Always Has Maintained The Right To Amend, Modify Or Terminate The Salaried Heath Plan And, In Fact, Has Amended The Plan Annually Since 1993.

Although resort to extrinsic evidence is unnecessary, that evidence will underscore Deere's right to amend, modify or terminate the Plans.  First, Plan fiduciaries, including Stephen Clark, Deere's former Manager – Benefits Planning and Strategic Design, Van Bruwaene and Glenn Huston, Deere's current Director – Human Resources Global Development (formerly Deere's Manager of Employee Benefits), will testify that Deere always has had an unqualified right to amend, modify or terminate the Plans.  (Docket No. 156-3 ¶¶ 48-56).

Second, Deere will show that it reviewed the health care benefits provided to salaried employees and retirees on an annual basis to determine whether the benefits were comparable with those offered by the Company's competitors.  (Docket No. 156-3 ¶¶ 57-63).  Deere's annual review even included discussions regarding whether to change the retiree health benefits provided to employees who retired prior to July 1, 1993.  (Docket No. 156-3 ¶¶ 71-74).[1]  Indeed, Deere exercised its right to modify the Salaried Health Plan, including the health benefits offered to retirees, annually since 1993.  (Docket No. ¶¶ 64, 75).  Those changes included "plan design changes, additional changes in co-pays, changes in out of-pocket money," and changes in coverage. (Docket No. 156-3 ¶¶ 76-80).  Deere will present evidence that if an individual was employed in a unit under which he or she was covered by a plan providing retiree health benefits, then transferred to, and ultimately retires from, a unit that was not covered by a plan that provides retiree health

---

[1]  The fact that, to date, Deere has elected not to amend the Salaried Health Plan to change the benefits received by salaried employees who retired prior to July 1, 1993 (the "CORE" group), is of no moment.  *See Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir. 1990) ("Merely because defendants chose to exempt retirees from plan changes in the past does not mean that defendants considered themselves forever bound to do so").

benefits, the employee did not have retiree health benefits coverage in retirement.  (Docket No. 169-2 at ¶236)

Third, Deere annually reminded participants of its right to modify, amend or terminate the Plans.  (Docket No. 156-3 ¶¶ 94, 96, 98, 100-102, 105-110).  For example, annual enrollment forms apprised active employees and retirees of any benefit changes for the succeeding Plan year and specifically stated: "I understand that the terms and conditions of the Flexible Benefit Plan are subject to, and controlled by the various Plan documents that comprise the Plan, which are subject to amendment, change, modification or termination by the Company at any time."  (Docket No. 156-3 ¶¶ 102).  Deere also provided Total Compensation Summaries to Plan participants from 1991 to 1996, which detailed their then current benefits and included explicit ROR language.  (Docket No. 156-3 ¶¶ 105-109).

This extrinsic evidence supporting Deere's right to modify retiree health benefits is an additional reason that plaintiffs cannot prevail on their contractual vesting claim.  *See, e.g., In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 58 F.3d at 905-906 (upholding the district court's finding that extrinsic evidence – including the intent of the plan sponsor, the retirees' "understanding" and the fact that the company had not reduced retiree health benefits prior to litigation – did not show an intent to vest); *Sengpiel v. The B.F. Goodrich Co.*, 970 F. Supp. 1322 (N.D. Ohio 1997) (plaintiffs' testimony regarding the company's right to amend or terminate retiree welfare benefit plans, releases signed by employees, and a letter from the CEO written five years

before any of the plaintiffs retired did not establish that the company intended to vest retiree health benefits); *aff'd* 156 F.3d 660 (6th Cir. 1998).[2]

## II.   PLAINTIFFS' CLASS CLAIM FOR VESTED BENEFITS UNDER THE SERPS (COUNT I) ON BEHALF OF SUBCLASS 2 ALSO FAILS.

### A.   The Plan Provisions Comprising The SERPs Are Incorporated Into The Salaried Pension Plan, Do Not Reference Retiree Health Benefits, And Are Subject To The Salaried Pension Plan's Explicit Reservation Of Rights Provision.

Plaintiffs contend that "the SERPs constitute binding and enforceable agreement[s]," which promised to plaintiffs that they "would continue to receive health benefits in retirement on the same basis as during active employment."   (8/4/09 Tr. at 17).   Plaintiffs further argue that offering documents, explanatory correspondence and releases "formed a bilateral contract that would be enforceable."   *Id.* at 18.

But the SERPs are not "stand-alone" plans or agreements.   Just the opposite – they are amendments to the Salaried Pension Plan.   (Docket No. 161-2 ¶¶ 21, 53).   The Salaried Pension Plan provisions that comprise the SERPs are contained in Article III, Sections 3 and 3.1 of the Salaried Pension Plan and the exhibits attached thereto.   (Docket No. 161-2 ¶ 21).   SERPs are implemented only by the Deere Compensation Committee through exhibits attached to the Salaried Pension Plan from time to time.   (Docket No. 161-3 ¶¶37-38).   Indeed, each Flex Retiree who elected a SERP, signed an election form and acknowledged that "I hereby elect the [SERP] . . . *under the provisions of the John Deere Pension Plan for Salaried Employees*."   (Docket No. 158-15 ¶¶ 25, 26, 28, 35, 39, 48) (emphasis added).

---

[2] Plaintiffs' argument that the comments of Deere managers gave rise to vesting, (Docket No. 164 at 17-18), "like this whole suit, reflects confusion between the employer and the plan, which under ERISA is a separate trust."   *Helfrich v. Carle Clinic Assoc., P.C.*, 328 F.3d 915, 916 (7th Cir. 2003).   Indeed, "Plans cannot control what miscellaneous recruiters and personnel managers may say, nor does even a large employer's human-resources staff draft descriptions with the precision that the plan itself will do – for the employer knows that its staff can refer to the summary plan description." *Id.* at 916-17.   Regardless, "statements by an employer's representatives about benefits do not legally alter an ERISA plan, which is required by statute to be written."   *Barker v. Ceridian Corp.*, 193 F.3d 976, 982 (8th Cir. 1999) (citation omitted).

Moreover, nothing in the SERP amendments to the Pension Plan provide for "medical benefits." (Docket No. 161-2 ¶¶ 31, 54). The Salaried Pension Plan defines "Medical Benefits" as:

> the Company's (or a Subsidiary's) share of payments of premiums or other costs of coverage under a Medical Plan on behalf of an Eligible Retiree and/or an Eligible Spouse and dependents (as defined in the Medical Plan) in accordance with the terms of such Medical Plan. Medical Benefits will only constitute those benefits that are set forth in Section 213(d) of the Code.

*Id.* ¶54.

By contrast, the SERP provisions contained in the Salaried Pension Plan merely outline the service credits needed for an employee to retire early and obtain enhanced *pension* payments under the Plan. *Id.* ¶36. The SERP amendments make no reference to health benefits at all. *Id.* ¶36, 47.

Wholly ignoring this dispositive Plan language, plaintiffs seek to manufacture a "bilateral contract" out of the explanatory materials provided with the SERPs. The Eighth Circuit has rejected this precise argument and, in fact, has held that "the documents by which [the defendant] formally adopted the Program confirm that it was an amendment to *existing* employee benefit plans" and *not* a separate ERISA plan. *Stearns*, 297 F.3d at 711 (emphasis added), *affirming* 97 F. Supp. 2d 954, 959 (D. Minn. 2000) (holding that adoption of plan amendment – after 43 days of 47-day election period had elapsed – "eliminates any possible doubt that defendants incorporated the terms of the Early Out Program into the 1993 Plan as an amendment, rather than establishing the program as an independent plan.").

Plaintiffs contend that "[t]here can be no dispute that the 2001 Special Early Retirement Program benefits are those set forth in the five page [July 10, 2001] offering document entitled 2001 Special Early Retirement Program (SERP) on which the promise to pay health benefits in retirement on the same basis as during active employment is unambiguously set forth on the fourth page." (Docket No. 164 at 8). Plaintiffs assert that "[t]he other SERPs contained similar promises for the

right to receive health benefits throughout retirement that participants received during active employment and likewise required participants to sign releases." *Id.* Plaintiffs are wrong.

First, the July 10, 2001 letter specifically distinguished between the enhanced *pension* benefits available under the SERP and the "standard retirement benefits" available to participants, regardless of whether they retired under a SERP. (Docket No. 161-2 ¶¶41, 57; Docket No. 161-3 ¶¶119-122). Indeed, the description of "Health Benefits" in the July 10, 2001, letter is contained in a section entitled "Standard Retirement Benefits." *Id.* Witnesses will testify at trial that "medical benefits went along with your retirement benefits whether it was a SERP or just early retirement or normal retirement." (Docket No. 156-3 ¶ 45-46; *see also* Docket No. 164 at 7; Docket No. 160 at App. 120 ("Additional Considerations[:]   In order to receive the *enhanced* SERP benefits, all employees . . . will be required to sign [a release].")) (emphasis added).[3]

Second, the July 10, 2001, letter, other explanatory materials and releases are not sufficiently definite to qualify as a stand-alone "medical plan." Statements in the "informational packets" such as "[y]ou will continue to be eligible for health benefits in retirement," (Docket No. 164 at 7), are insufficient to explain Deere's retiree health benefits. Regardless of whether the packets specifically referred to the "Salaried Health Plan" or the applicable SPD, "the materials explaining the [SERP] required reference to the existing plan for comprehension." *Cole v. Int'l Union, UAW*, 533 F.3d 932, 937 (8th Cir. 2008) (citing *Stearns*, 297 F.3d at 711).[4] Indeed, the SERP "offering documents" expressly reference the Salaried Health Plan and the SPD. Plaintiffs

---

[3] Citing to Mr. Huston's deposition testimony, plaintiffs contend that "Defendants admitted that once a SERP was accepted and a release signed, the company was bound by its promises and that once an employee retired 'That would lock it in.'" (Docket No. 158-2 at 10). This grossly distorts the record. Mr. Huston gave that testimony in the context of the enhanced *pension* benefits under the SERPs. Docket No. 161-2 ¶56.

[4] Far from supporting their case, Docket No. 158-2 at 10, *Cole* rejected the same argument that plaintiffs make here – *i.e.*, that the SERP "is a stand-alone provision [and not] part of a larger benefit plan." *Id.* There, as here, "such a compartmentalized approach is improper." *Id.*; *cf. Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006) ("An employer's promise that ERISA plan benefits will be paid if a future contingency occurs does not create a 'free-standing contract'").

signed an "Authorization To Deduct Health Benefit Premiums From Pension Benefits" as part of the 2001 SERP.  There, plaintiffs elected to deduct premiums from their pension proceeds "for the continuation of medical coverage under the *John Deere Health Benefits Plan*."  (Docket No. 169-2 ¶337) (emphasis added).   In addition, the "Health Benefits" section of a July 10, 2001 letter regarding the SERP expressly cross references the "Summary Plan Description."  (Docket No. 164 at 7; Pl. App. at 120).

Finally, even if the offering materials and releases formed "bilateral contracts" regarding retiree health benefits, "any dispute over the term *of that benefit* must be resolved by looking to ERISA's statutory provisions and relevant case law."  *Stearns*, 297 F.3d at 710 (emphasis added). Accordingly, "if the plan, properly construed, does not afford the benefits at issue, they may not be added to the plan by implication from an 'independent bilateral contract.'"  *Id.*[5]

Thus, contrary to plaintiffs' contention, "[a]n intent to vest may not be implied from the fact that the Releases and the [documents explaining the early retirement program] did not address the vesting issue or cross-reference the [ROR] provision."  *Stearns*, 297 F.3d at 712*; see also Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 568 (7th Cir. 1995) ("exit agreements" were not amendments to a welfare plan).  Like the plaintiffs here, the plaintiffs in *Stearns* argued that early retirement plans and releases formed a separate contract to vest benefits apart from the controlling plan document that contained an express reservation of rights provision.  297 F.3d at 708-09.  The Eighth Circuit rejected that argument and affirmed summary judgment in favor of the employer. The *Stearns* court concluded that the early retirement programs were not free-standing ERISA

---

[5] Plaintiffs rely on *Petersen v. E.F. Johnson Co.*, 366 F.3d 676 (8th Cir. 2004), which is distinguishable in several important respects.  First, the executive incentive program at issue in *Petersen*, unlike the SERP, was not intended to be an amendment to an existing plan, nor was it incorporated into any other plan.  Second, the *Petersen* court found that the program was an ERISA plan because it "require[d] an ongoing administrative program to meet the employer's obligation."  *Id.* at 679 (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987)).  By contrast, each SERP was a one-time event, incorporated into the Pension Plan through a formal plan amendment.  Once the SERP elections were made, there was no need to "monitor" the benefits on an ongoing basis because the pre-existing Plan provided the pension benefits.

plans, stating that "[t]he documents NCR distributed in offering the [early retirement program] were not sufficient to explain the retirement health care benefits being offered without reference to the detailed benefit provisions in the existing Group Benefits Plan." *Id*. at 711. Rather, the early retirement programs were amendments to the governing health plan, which contained an express reservation of rights clause that defeated the plaintiffs' vesting claim. *Id*. at 711-12.

**B.     Even If The SERPs Are Separate Plans, They Do Not Promise Lifetime Or Vested Benefits.**

Plaintiffs rely on language stating that coverage would "continue" in retirement or that retirees would "continue to be eligible for health benefits in retirement on the same basis as during active employment." (Docket No. 164 at 7). This language actually undercuts plaintiffs' claim of "lifetime" benefits. The health benefits plaintiffs received "during active employment" had always been subject to the Salaried Health Plan's clear reservation of rights provision. (Docket No. 161-2 ¶¶ 1-20). Thus, the phrases "same basis" and "will continue" confirm that the Plan's reservation of rights provision would continue to apply in retirement as it did during active employment. Indeed, as subsequent correspondence made clear to plaintiffs, the reference to providing "health benefits in retirement on the same basis as in active employment" "indicated that *currently* health benefits for retirees are the same as they are for active employees. ... The company reserves the right to amend, modify or terminate benefit plans at any time." (Docket No. 161-2 ¶41).[6]

Moreover, statements that coverage "continues" in retirement are not synonymous with being "vested." *Anderson*, 836 F.2d at 151*; see also DeGeare*, 837 F.2d at 814, 816 (employer's promise to future retirees that benefits "will continue" could not be read as a promise of vested lifetime benefits in the face of a termination clause), *vacated on other grounds*, 489 U.S. 1049 (1989); *Vallone v. CNA Finan. Corp.*, 375 F.3d 623, 633 (7th Cir. 2004) ("The problem for the

---

[6]   For the same reason, plaintiffs' claim that the "changes made in implementing the 2008 'Healthy Directions' benefits programs violated the binding contractual promises Defendants made through the SERPs and other Plan documents," (*see* Docket No. 158-2 at 15-16), fails as a matter of law.

plaintiffs is that "lifetime" may be construed as 'good for life unless revoked or modified.'  This construction is particularly plausible if the contract documents include a reservation of rights clause"); *Sprague*, 133 F.3d at 401 (even a statement providing for "lifetime" benefits did not create a vested benefit in the face of an unambiguous reservation of rights clause in the same SPD).[7]

### III. PLAINTIFFS' INDIVIDUAL CLAIMS FOR BREACH OF FIDUCIARY DUTY UNDER ERISA (COUNT II) FAIL AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE THAT DEERE "CONCEALED" THE HEALTHY DIRECTIONS CHANGES OR MADE MATERIAL MISREPRESENTATIONS ON WHICH PLAINTIFFS REASONABLY RELIED TO THEIR DETRIMENT.

To establish a claim for breach of fiduciary duty under ERISA based on Deere's alleged concealment of Healthy Directions or misrepresentations, plaintiffs must show that: (1) Deere was acting in a fiduciary capacity when it made the alleged representations; (2) these constituted material misrepresentations; and (3)  Plaintiffs relied on those misrepresentations to their detriment. *Martino-Catt v. E.I. duPont Nemours and Co.*, 317 F. Supp. 2d 914, 927 (S.D. Iowa 2004) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).  Plaintiffs cannot show that Deere concealed the upcoming Healthy Directions changes, made any material misrepresentations, or that plaintiffs reasonably relied on such representations to their detriment.[8]

### A.     Deere Did Not "Conceal" The Healthy Directions Changes From Plaintiffs.

#### 1.     Plaintiffs Retired Long Before Deere Gave "Serious Consideration" To The Healthy Directions Changes.

In their Memorandum in Support of Their Motion for Partial Summary Judgment, plaintiffs claim that Deere breached its fiduciary duty:

---

[7] This is particularly true here, where the communications plaintiffs received in connection with the 2001 SERP reiterated that the medical plans were reviewed annually and that any "changes in benefit design or pricing" would be communicated during the open enrollment period."  (Docket No. 156-3 ¶ 129).  As Van Bruwaene conceded, nothing in that correspondence advised employees who were considering the SERP that such "changes" would be limited to co-pays or deductibles, or would not apply to individuals after they retired.  (Docket No 156-3 ¶ 130).  Further, Deere in fact made changes to health benefits on an annual basis, both during plaintiffs' retirement and afterward.  (*See supra* at 12).

[8] Only plaintiffs Brubaker, Blosch and Stohlmeyer have asserted individual breach of fiduciary duty claims.  (Docket No. 143 at 8).

> to Flex Retirees by concealing the "Healthy Directions" changes that were under serious consideration since 2004 and adopted on November 17, 2005, by failing to apprise Flex Retirees of the Plan changes and by failing to inform those Flex Retirees who were eligible for Medicare that they would no longer have any Deere-maintained health benefits available to them on and after January 1, 2008.

(Docket No. 158-2 at 1; *see also* Docket No. 1 ¶57).   Under the "serious consideration" theory, "when a plan participant inquires about a potential plan change, the employer-fiduciary has a duty to provide complete and truthful information about any such changes then under serious consideration." *Bins v. Exxon Co. USA*, 220 F.3d 1042, 1045 (9th Cir. 2000).   "The employer's duty does not extend to employees who do not inquire about potential plan changes, however." *Id.* at 1053; *see also Wilson v. Southwestern Bell Telephone Co.*, 55 F.3d 399, 405 (8th Cir. 1995) ("Plan fiduciaries are not obligated under ERISA to provide information to potential plan beneficiaries about possible future offerings."); *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 435 (4th Cir. 1986) ("It is not a violation of ERISA to fail to furnish information regarding amendments before these amendments are put into effect.").

Here, the only "Flex Retirees" asserting breach of fiduciary duty claims are plaintiffs Blosch, Brubaker and Stohlmeyer.   It is undisputed that all three retired in 2001, long before plaintiffs even allege that Healthy Directions was under "serious consideration." (Docket No 161-3 ¶¶4, 6, 8).   More to the point, none of the plaintiffs asked Deere representatives any questions about the proposed changes.   Thus, plaintiffs' breach of fiduciary duty claim based on the "serious consideration" theory fails as a matter of fact and law.

In addition, there is no evidence whatsoever that plaintiffs were harmed by Deere's alleged failure "to apprise Flex Retirees of the Plan changes and [failure] to inform those Flex Retirees who were eligible for Medicare that they would no longer have any Deere-maintained health

benefits….” (Docket No. 158-2 at 1). None even has alleged that they suffered damage from a lack of time or planning, much less how they would have amassed savings “to cope” with the changes.

### 2. Deere Timely Provided Details Of The Healthy Directors Changes When They Became Known.

Plaintiffs allege that Deere withheld information regarding Health Directions “to serve its own interest in defeating the ability of the retirees to challenge or resist the changes.” (Docket No. 158-2 at 17-18). Plaintiffs claim “Deere considered notifying Flex Retirees of Healthy Directions in 2006 but chose not to do so because it was worried that Flex Retirees would have time to organize and resist. This came to be known as the “Big Bang” approach.” (Docket No. 158-15 at ¶ 67; citing testimony of Huston, Clark and Olson). Again, plaintiffs distort the testimony of Deere witnesses.

Deere witnesses will testify that the issue of whether Flex Retirees would have time to organize only was a “consideration in a business evaluation.” (Docket No. 161-2 ¶67). Deere witnesses unanimously agree that Deere decided to wait until September, 2007 to apprise Flex Retirees of the Healthy Directions changes because it would not be able to answer retirees’ questions regarding how the changes may affect them until it had complete and full information. *Id.*

Thus, the “Big Bang” approach was hardly nefarious, but rather a communication plan that made sure that Deere knew the answers regarding all of the questions surrounding the details of the implementation of Healthy Directions at the time of the announcement, “including the 2008 available medical plans and premiums.” *Id.* at ¶¶ 66-67. Clark will testify without contradiction that notifying Flex Retirees of the changes in September 2007 provided an adequate amount of time for Flex Retirees to prepare and make their coverage elections. (*Compare id.* at ¶¶ 69, 74 *with* Docket No. 158-2 at 17) (“Defendants were well aware of the problems and challenges retirees would face in making changes to high deductible plans or medical reimbursement accounts . . . .”).

Moreover, it is undisputed that Deere did not have all of the details regarding the availability of retiree health plans and costs until the fall of 2007, when Deere provided those details to its

retirees.  (Docket No. 161-2 ¶67).  Deere was not required to provide notice before it had all of the relevant information, much less before the changes took effect.  Indeed, Deere's concern about having all information on hand to answer anticipated questions is shared by the courts.  *See, e.g., Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2nd Cir. 1996) ("insisting on voluntary disclosure during the formulation of a plan and prior to its adoption would, we think, increase the likelihood of confusion on the part of beneficiaries and, at the same time, unduly burden management, which would be faced with continuing uncertainty as to what to disclose and when to disclose it."); *Stanton*, *supra* at 19.  Similarly, a fiduciary is not required "to disclose its internal deliberations." *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2nd Cir. 1994).  Rather, "when a plan administrator speaks, it must speak truthfully." *Id.* at 668.  That was the case here.  Accordingly, plaintiffs breach of fiduciary duty claims fail.

### B. Plaintiffs Cannot Establish That Deere Made Any Other Misrepresentations Related To Retiree Health Benefits.

Separate and apart from their erroneous contention that Deere concealed the Healthy Directions program, plaintiffs also allege that Deere "materially misrepresented, misled, and failed to inform Plaintiffs that their benefits would be reduced or eliminated or that plans to do so were under serious consideration."  (Docket No. 1 ¶ 57).  Plaintiffs' claim is premised on an alleged "systematic, companywide policy of communicating that medical benefits for retirees are for life." (12/5/08 Tr. at 321; App. at 17d).  The evidence presented at trial will show that no such elaborate conspiracy existed.

Plaintiffs continue to rely heavily on the September 17, 1992 letter signed Deere's then Chairman and CEO, Hans Becherer, and President and COO, David Stowe, which announced "several major changes to the benefits program" and stated that "[t]hese benefit changes will be carried by active salaried employees into retirement."  (Docket No. 156-3 ¶ 131).    Mertroe Hornbuckle, Deere's Vice President of Human Resources, who drafted the letter, Clark, who

reviewed and revised the letter, and Huston, as Deere's Rule 30(b)(6) representative, will testify that the above-quoted language meant that Deere would continue to review and change benefits on an annual basis and retirees would experience similar changes as active employees.  (Docket No. 156-3 ¶¶ 132-134).  Even plaintiff Stohlmeyer admitted that the letter does not say that benefits could not be changed after retirement.  (Docket No. 156-3 ¶ 135).  Moreover, the 1992 letter was followed by meetings with employees, including plaintiffs, during which Deere explained the upcoming health benefit changes and explicitly advised them that "Deere may modify benefits in the future" and that "final plan language will control."  (Docket No. 156-3 ¶¶ 136-138).

Plaintiffs also have expressed an intent to present testimony from non-plaintiff retirees regarding vague and decades-old statements from non-fiduciaries related to Deere's then-intentions with respect to retiree health.  (8/4/09 Tr. at 38).  Plaintiffs will be unable to establish, as they must, "that the alleged communication was made by an authorized fiduciary" who had actual or apparent authority to advise the Company's employees of their rights under the Plan."  *In re Unisys Corp. Retiree Medical Benefits Litig.*, 2003 U.S. Dist. LEXIS 1577, at *14 (E.D. Pa. Feb. 4, 2003), citing *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 72 (3rd Cir. 2001).  The evidence presented at trial will show that the alleged representations came from managers who had nothing to do with the Plans.  As the Seventh Circuit noted in *Frahm v. The Equitable Life Ins. Soc'y of the U.S.*, 137 F.3d 955 (7th Cir. 1998):

> Havoc would ensue if plans meant different things for different participants, depending on what someone said to them years earlier. Memory is weak compared to the written word, and there is a substantial risk that participants will not correctly recall what was said, will exaggerate (in their favor) what they heard, or will simply prevaricate in order to improve their position. Employers could do little to protect themselves against such claims – which is why ERISA calls for writings, and why we concluded above that a rule akin to the statute of frauds applies to all claims based on bilateral contracts. If it is hard now to administer plans that apply to all participants, it is impossible to see how any employer could administer a plan that

meant something different for each participant, where the difference
was not committed to writing.

137 F.3d at 960.

Further, plaintiffs will be unable to present any evidence that Plan fiduciaries made promises never to amend retiree health benefits.  To the contrary, on an annual basis, Deere provided plaintiffs with correspondence that reminded plaintiffs of Deere's right to modify, amend or terminate the Plans that governed health benefits for active employees and retirees, including annual open enrollment forms, SPDs (which specifically advised plaintiffs to disregard contrary representations and Total Compensation Summaries.  (*See supra* at 12; Docket No. 161-2 ¶1).  *All* of these documents contained statements explicitly reserving Deere's right to change the Plans.  *Id.*

Moreover, Deere communicated to employees its strategy to remain market competitive and specifically highlighted the fact that "[p]ay and benefits work in tandem and evolve over time to keep pace with our business objectives and your needs in a changing environment." (Docket No. 156-3 ¶ 110).  Further, an August 2001 letter describing health benefit changes for 2002 reiterated Deere's annual review and modification of such benefits, stating: "Every year the medical and dental plans provided to John Deere salaried field employees are reviewed to ensure they balance the company's objective to provide competitive benefits with economic realities of the cost of medical care." (Docket No. 156-3 ¶ 129).

This is hardly indicative of a scheme to misinform Plan participants regarding the vesting status of retiree health benefits.  Tellingly, plaintiffs Brubaker, Blosch and Stohlmeyer all testified that they were aware of Deere's right to change health benefits and that Deere, in fact, changed health benefits on an annual basis, both during their employment and after their retirement.  (Docket No. 156-3 ¶¶ 141-148).

At most, plaintiffs have shown that Deere made general representations regarding the then-present state of retiree health benefits.  Absent evidence that such statements were false at the time

23

they were made, plaintiffs' breach of fiduciary duty claims fails.  *See, e.g., Frahm*, 137 F.3d at 961 (statements made by managers to retirees regarding lifetime benefits "were not false, because they accurately informed the agents about the operation of the plans that [the employer] then had in force…they were statements not of 'fact' but of present intention"); *Vallone*, 375 F.3d at 641-42 (plaintiffs failed to show that management made a misrepresentation regarding the employer's expectation that it would continue to provide medical benefits to retirees for life, because such statements were true at the time made).

Plaintiffs continue to rely on cases such as *Varity* and *Krohn* (Docket No. 158-2 at 17), which easily are distinguished.  In *Varity*, the employer made affirmative misrepresentations to employees regarding the security of their benefits in order to induce the employees to transfer to a failing division.  516 U.S. at 493.  Thus, the Supreme Court held that the employer violated its fiduciary duty to plan beneficiaries by "knowingly and significantly. . .deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense." *Id*. at 506.  That is a far cry from this case, where evidence will show that any statements made to plaintiffs indicated Deere's then-present intent with respect to retiree health benefits and Deere repeatedly reminded plaintiffs that benefits could change.

*Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999), is equally inapposite.  In *Krohn*, the plaintiff made an affirmative request for information regarding disability benefits.  Although the employer was aware of the plaintiff's medical status and repeatedly received notice that the plaintiff would be eligible for and need long-term disability benefits, it provided her only with information regarding short-term disability benefits.  *Id*. at 549.  Due to the employer's omission, the plaintiff ultimately was precluded from asserting her rights under the long-term disability plan.  *Id*. at 549-50.  According to the Court, because the plaintiff requested information from the plan fiduciary, who was aware of the plaintiff's situation, "the fiduciary has an obligation

24

to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *Id.* at 547.

Here, plaintiffs do not contend that they specifically requested information regarding the vesting status of retiree health benefits.  And, even if they had, the evidence will establish that Deere provided them with "complete and accurate" information through Plan documents and SPDs, which repeatedly reminded plaintiffs that Deere had the unqualified right to terminate, amend or modify health benefits, for retirees and employees alike.  (*See supra* at 4-5).  A breach of fiduciary duty claim fails where "the record is devoid of evidence of a 'knowing misrepresentation' or any showing of 'affirmative acts of fraud.'"  *Brant v. The Principle Life and Disability Ins. Co.*, 195 F. Supp. 2d 1100, 1120 (N.D. Iowa 2002).

Further, any alleged misrepresentations are not material because the governing Plan documents always have contained explicit ROR language.  Indeed, the SPDs specifically state that "[a]ll statements in this book, the official Plan documents, and *all representations by the company or its personnel* are subject to this right of amendment, modification, suspension or termination." (Docket No. 156-3 ¶ 26) (emphasis added); *see Sprague*, 133 F.3d at 405 (rejecting breach of fiduciary duty claim where members of management told all retirees that coverage would be paid by the company "for their lifetimes," because the plan documents conferred clear reservation of rights language); *Kerber v. Qwest Group Life Ins. Plan*, 2009 WL 2710207, at *8 (D. Colo. Aug. 25, 2009) (where the ROR provisions contained in plan documents are unambiguous, the court "cannot conclude that Qwest made any material misrepresentations").

###    C.    Plaintiffs Could Not Have Reasonably Relied On Any Alleged Misrepresentations.

Plaintiffs cannot establish that they reasonably relied on any alleged misrepresentations. This requires an examination of "the circumstances surrounding each communication (*i.e.*, the

timing, content, and context) in order to determine whether [it] rises to the level of a material misrepresentation" and "entail[s] individualized evidence, including the retiree's own testimony as to what he or she heard or read." *In re Unisys Corp. Retiree Medical Benefits Litig.*, 2003 WL 252106, at *16 (citation omitted).

The alleged oral representations proffered by plaintiffs are unsupported and so vague as to be meaningless. Plaintiffs and their witnesses only recall vague assertions allegedly made by various Deere employees that health benefits would "continue" in retirement or that they would have the "same benefits in retirement." (Docket No. 156-3 ¶¶ 81-83, 86-93). Plaintiffs specifically testified that no Deere employee ever informed them that the Company could not change retiree health benefits in the future. (Docket No. 156-3 ¶¶ 84-85).

Statements that "benefit changes will be carried by active salaried employees into retirement" (Docket No. 156-3 ¶¶ 131), that "your health benefits would be in retirement as they were as an active employee" (Docket No. 156-3 ¶ 83), or that "when you retire, you will take with you the same benefits that you maintained" (Docket No. 156-3 ¶ 90), are not synonymous with being "vested." *Anderson*, 836 F.2d at 1519; *see also supra* at 9-10. As a matter of law, plaintiffs could not have reasonably relied on such representations, given the unambiguous Plan language to the contrary. *See, e.g., Kerber,* 2009 WL 2710207 at *10 ("given the clear case law indicating that it is not reasonable to rely on oral statements that contradict clear written statements, I cannot conclude that the oral statements here are material as [the plaintiff] was in possession of express written reservation of rights clauses that were in effect at that time"). Indeed, plaintiffs failed even to read carefully the SPDs that they received from Deere. (Docket No. 156-3 ¶¶ 95, 97, 99). As pointed out by this Court, and conceded by plaintiffs, "[y]ou don't get the benefit of not reading the [Plan] language." (12/5/08 Tr. at 380; Docket No. 156-4 at 30).

**IV.    PLAINTIFFS' INDIVIDUAL ESTOPPEL CLAIMS (COUNT III) FAIL AS A MATTER OF LAW BECAUSE THE TERMS OF THE PLANS ARE CLEAR AND UNAMBIGUOUS, AND BECAUSE ANY RELIANCE BY PLAINTIFFS ON ANY ORAL OR WRITTEN STATEMENTS WHICH CONTRADICT THE PLAN TERMS WAS UNREASONABLE.**

To state an actionable claim for equitable estoppel, plaintiffs must establish "by clear and convincing evidence": (1) a false representation or concealment of material terms by Deere; (2) lack of knowledge on the part of plaintiffs; (3) intent by Deere that the representation or concealment be acted on; and (4) reliance by plaintiffs to their prejudice. *Neely v. Am. Family Mut. Ins. Co.*, 123 F.3d 1127, 1130 (8th Cir. 1997) (citing *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 100 (Iowa 1995)); *see also Jensen*, 38 F.3d at 953 ("courts recognizing estoppel in ERISA cases require proof of a material misrepresentation on which the participant or beneficiary has reasonably relied to his detriment").

Plaintiffs contend that they reasonably relied to their detriment on the alleged misrepresentations made by Deere regarding the continuation of retiree health benefits and, therefore, Deere was estopped from modifying such benefits. (Docket No. 1 ¶¶ 65-66). Plaintiffs' claim for estoppel fails as a matter of law because the Plans' terms are unambiguous and plaintiffs' reliance on any contrary representations was unreasonable.

First, the Plan documents clearly and unambiguously state that Deere reserved the right to amend or modify the terms of the Plans. *See supra* at 4-5. This alone dooms plaintiffs' estoppel claims. *Fink v. Union Ctr. Life Ins. Co.*, 94 F.3d 489 (8th Cir. 1996) ("common-law estoppel principles cannot be used to obtain ERISA benefits that are not payable under the terms of the ERISA plan"); *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 960 (8th Cir. 1995) ("In the context of an equitable estoppel claim, we have rejected the argument that oral or informal communications by an employer can modify the provisions of a written ERISA plan") (citation omitted); *Slice v. Sons of Norway*, 34 F.2d 630, 632 (8th Cir. 1994) ("When the alleged

misrepresentations flatly contradict the unambiguous language of the plan, an estoppel claim is not available"); *Sprague*, 133 F.3d at 404 ("The principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions") (citing *Jensen*, 38 F.3d at 953) ("we have held that an ERISA plaintiff may not use equitable estoppel to recover money damages for reliance on an 'extra-contractual promise'" and "[m]ost courts have held that ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise") (citation omitted).

Second, through the SPDs, annual enrollment forms, Total Compensation Summaries and other correspondence that Deere distributed to active employees (had they bothered to read these documents), plaintiffs were on notice that Deere could amend or modify retiree health benefits at any time.  (Docket No. ¶¶ 26, 102, 108-109, 113-115, 139).  Moreover, the SPDs expressly stated that "all representations by the company or its personnel are subject to this right of amendment, modification, suspension or termination."  (Docket No. 156-3 ¶ 26).  To the extent plaintiffs relied on oral statements to the contrary, therefore, their reliance was unreasonable and unjustified.  *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374-75 (5th Cir. 2008) (an estoppel claim "is not permitted if based on purported oral modification of plan terms" and there can be "no reasonable reliance on informal documents in the face of unambiguous Plan terms") (internal citations omitted); *Murphy*, 61 F.3d at 568 ("Murphy could not have reasonably believed that one sentence from one page of several documents distributed to him upon retirement totally displaced the elaborate negotiations and contractual framework that guaranteed benefits, including retiree benefits, for the past 30 years.  Such reliance would be patently unreasonable").  This is particularly true where plaintiffs acknowledge that Deere could change retiree health benefits and, in fact, changed health benefits both during their active employment and their retirement.  (Docket No. 156-3 ¶ 141-148).

**V.      THE EVIDENCE PRESENTED AT TRIAL WILL NOT SUPPORT PLAINTIFFS'
CLAIM FOR VIOLATION OF ERISA SECTIONS 104(B) AND 503 FAIL (COUNT
IV).**

      **A.      Deere Complied With The Disclosure Requirements Of ERISA Section 104(b)
And, Therefore, Plaintiffs' Claim For Violation Of This Provision Fails.**

            **1.      Deere Provided Plaintiffs With All Required Documents Pursuant To
ERISA Section 104(b)(4).**

Although plaintiffs requested a laundry list of documents from Deere prior to this litigation,
summary judgment revealed that their Section 104(b)(4) claim boils down to a claim that Deere was
obligated to provide a copy of the Plan documents, "including SERPs, and SPDs in effect during
employment and retirement."  (Docket No. 162 at 9).  Plaintiffs' contention that ERISA requires
production of historical plan documents is wrong as a matter of law.

Under ERISA, plan administrators are required to:

> furnish a copy of the latest updated summary plan description, and the
> latest annual report, any terminal report, the bargaining agreement,
> trust agreement, contract, or other instruments under which the plan is
> established or operated" to beneficiaries who request such documents
> in writing.

29 U.S.C. § 1024(b)(4).  The Eighth Circuit has construed Section 104(b) narrowly.  The phrase
"other instruments" does not include just "any document relating to a plan." *Brown v. Am. Life
Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999) (noting that annual reports are subject to Section
104(b), but that other documents which simply evidence an ESOP's day-to-day operation are not
"other instruments" and do not need to be disclosed, even upon request); *see also Ames v. Am. Nat'l
Can Co.*, 170 F.3d 751, 759 (7th Cir. 1999) (finding plan participants were entitled to documents
under which plan is governed, not to every document that contains information about plan and how
it is administered).  Rather, the phrase "other instruments" should be read as "similar in nature to
the class of objects that specifically precedes it": those legal documents (trust agreements,

bargaining agreements, etc.) that govern the latest plans.  *Michael v. Am. Int'l Group, Inc., et al.*, 2008 WL 4279582, at *5 (E.D. Mo. Sept. 15, 2008).

Thus, plan administrators are required to disclose only "currently operative, governing plan documents." *Curtiss-Wright Corp.*, 514 U.S. at 84.  Significantly, a plan administrator has no obligation to provide historical plan documents.  *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999) ("outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)"); *see also Macklin v. Ret. Plan for Employees of Kan. Gas & Elec. Co.*, 99 F.3d 1150, 1996 WL 579940, at *4 (10th Cir. Oct. 9, 1996) (company substantially complied with Section 104(b) when it provided the plaintiff the most recent plan (1994) instead of the plan in effect at the time he retired (1985)); *Roarty v. AFA Protective Sys., Inc.*, 2008 WL 4455588, at *8 (E.D.N.Y. Sept. 30, 2008) (noting that ERISA claims "based on requests for outdated plan documents or previous versions of a benefit plan" have not been successful).

It is undisputed that in response to Stohlmeyer's request for Plan documents, Deere produced copies of the 2007 Salaried Health Plan, Retiree Health Plan, Salaried Pension Plan and SPD, the 2005 and 2006 Summary Annual Reports, and documents regarding the VEBA, as required by ERISA Section 104(b).  (Docket No. 152 at 2-4).  Deere was not required to produce outdated Plan documents from 1960 to the present, including Plan documents in effect at the time members of the class retired in response to the requests of plaintiffs' counsel on behalf of Grooms and the putative class.  (*Id.* at 7-8).  *Shields*, 188 F.3d at 903 (plaintiff not entitled to copies of plan documents in effect between March 1967 (date of his employment) and January 1989 (date of a plan revision), where he made the request for documents at the time of his retirement in 1994); *Macklin*, *supra*.

Plaintiffs argue that Deere has relied on earlier SPDs in defending themselves in this case. (Docket No. 162 at 9).   According to plaintiffs, "[g]iven that the documents are indisputably relevant to Plaintiffs' rights under the Plan, they are clearly documents under which the Plan is operated and established."   *Id.* at 9.   "Plaintiffs' argument fails to distinguish between Plan documents required to be provided under Section 1024 ... and the much broader category of documents 'relevant' to [their] benefit claim."   *Brucks v. Coca-Cola Co.,* 391 F. Supp. 2d 1193, 1210 (N.D. Ga. 2005) (cited at Docket No. 162 at 11).   That plaintiffs have chosen to put the earlier Plans at issue in litigation does not mean that Deere was statutorily obligated to provide plaintiffs with pre-litigation discovery.   *See Ames*, 170 F.3d at 759 ("the affirmative obligation to disclose materials under ERISA, punishable by penalties, extends only to a defined set of documents.   If litigation comes along, then ordinary discovery rules under the management of the district court provide the limits on what must be produced").

Plaintiffs also claim that Deere should have produced the correspondence surrounding the SERPs.   (Docket No. 162 at 19).   This contention is baseless.   First, as discussed above, the SERPs are not stand-alone ERISA plans, but rather amendments to the Salaried Pension Plan.   There is no dispute that plaintiffs were provided with the operative Salaried Pension Plan and the exhibits attached thereto.   Docket No. 161-3   ¶177.   Second, at best, the correspondence documents regarding the SERPs are historical "plans" that Deere had no obligation to provide.   (*See supra* at 30).   Third, eligibility for retiree medical benefits never has been governed by the SERP provisions contained in the Salaried Pension Plan.    At all times, the Salaried Health Plan has been the operative plan, and plaintiffs received the Plan in response to their request.   (Docket No. 161-3 ¶¶ 165, 169, 175).

**2.      Deere Timely Disclosed Information Regarding Healthy Directions Pursuant To ERISA Section 104(b)(1)(B).**

Plaintiffs argue that Deere should have provided earlier notice of the Salaried Health Plan changes that became effective on January 1, 2008.  (Docket No. 158-2 at 18).  This misstates the facts and the law and overlooks the notice that Deere provided to retirees.

"ERISA's disclosure requirements do not themselves mandate that an employer disclose information regarding the future of a benefit plan." *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 416 (5th Cir. 2003).  Indeed, "fiduciaries are not obligated under ERISA to provide information to potential plan beneficiaries about possible future offerings." *Wilson*, 55 F.3d at 405.  Instead, ERISA provides that "a summary description of [a] modification or change [as described in section 1022(a)] shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. § 1024(b)(1)(B).  As relevant here, section 1022(a) requires plan sponsors to prepare a "summary of any material modification in the terms of the plan[.]"  29 U.S.C. § 1022(a).

As explained by the Second Circuit,

> Insisting on voluntary disclosure during the formulation of a plan and prior to its adoption would … increase the likelihood of confusion on the part of beneficiaries and, at the same time, unduly burden management, which would be faced with continuing uncertainty as to what to disclose and when to disclose it. ….
>
> Congress's main purpose in imposing a disclosure requirement on ERISA fiduciaries was to ensure that employees [would have] sufficient information and data to enable them to know whether the plan was financially sound and being administered as intended. Permitting plan fiduciaries to keep secret their pre-adoption deliberations and discussions in no way frustrates this purpose. Rather, such a bright-line rule protects the interests of beneficiaries, who will receive information at the earliest point at which their rights can possibly be affected, as well as the interests of fiduciaries, who will be required to provide information only at the point at which it becomes complete and accurate.

*Pocchia*, 81 F.3d at 278-79 (internal quotation marks and citations omitted).

In October 2005, Deere notified employees and retirees that the Healthy Directions program would become applicable to retirees after January 1, 2007. (Docket No. 161-2 ¶60-61, 66). Subsequently, in November 2005, the Compensation Committee agreed that the program would have an effective date for retirees of January 1, 2008. *Id.* Though plaintiffs contend that Healthy Directions was in fact "adopted" in that meeting, the evidence will establish that Deere did not know in November 2005 the *details* of the Healthy Directions program as it would relate to Flex Retirees. As evidence will show, Deere still was exploring options that would be most effective in supporting the needs of Medicare eligible retirees. The details and implementation of Healthy Directions could not be finalized until Deere had available all of the information for "the benefits of retirees, including the 2008 available medical plans and premiums." (*Id.* at ¶61, 66).

Assuming *arguendo*, that the still-unknown details of a developing program that had not affected the terms of a plan is a "material modification in the terms of the plan," 29 U.S.C. § 1022(a), Deere already had satisfied any requirement to disclose such information because it had notified Flex Retirees in October 2005 – a month before the Compensation Committee action – that the program would take effect after January 1, 2007. Deere's October 2005 letter gave Flex Retirees notice more than two years before "the earliest point at which their rights [could] possibly be affected." *Pocchia*, *supra* at 17.[9]

Finally, Deere's communications with Flex Retirees in September 2007 – more than 100 days *before* the point at which Flex Retirees rights would be affected – comply with ERISA's disclosure requirements. 29 U.S.C. § 1024(b)(1)(B);[10] *Pocchia*, *supra*; *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 61-62 (2d Cir. 2006) (holding that the plan administrator's

---

[9] Plaintiffs have focused their "concealment" argument on Deere's notice of Health Directions to Flex Retirees who were eligible for Medicare. Evidence presented at trial will show that the October 2005 letter also provided ample notice to pre-65 retirees (*i.e.*, those who were not eligible for Medicare) of the upcoming changes to retiree health benefits.

[10] This is true whether the time period is 210 days from the end of the plan year or 60 days after the date of the adoption of the modification or change, which applies to group health plans in certain circumstances. 29 U.S.C. §1024(b)(1)(B).

April 1989 letter that described plan changes made in January 1989 satisfied disclosure requirement); *Groska v. N. States Power Co. Pension Plan*, 2007 WL 2791119 at *4 (D. Minn. Sept. 24, 2007) (holding that defendant timely met requirement to disclose summary of material modification where defendant "distributed the booklet to participants in late 1998, even though the changes were not effective until January 1999."); *Dall v. Chinet Co.*, 33 F. Supp. 2d 26, 44 (D. Me. 1998) (holding that "by distributing the brochures describing the 1993 amendments in April of 1993, Chinet fulfilled the automatic disclosure mandate of section 1024(b)(1) regarding the 1993 amendments.").

In addition, Deere satisfied the ERISA disclosure requirement because it issued a timely SPD that described the Healthy Directions program.  *See* 29 C.F.R. § 2520.104b-3(b) ("The summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description.").  The Department of Labor's regulation gives the example of a plan adopting a material modification in June 1976, and describing that change in July 1977 (*i.e.*, within 210 days of the end of the plan's calendar year).  *Id.*  Here, Deere issued the 2008 SPD on March 6, 2008, well within 210 days of the end of the plan year (the Salaried Health Plan operates on a calendar plan year).  Docket No. 161-3 ¶¶158-59.

> **3.      The Sanctions Prescribed By Section 1032 Are Inappropriate Because Deere Complied In Good Faith With The Disclosure Requirements Of Section 104(b).**

Plaintiffs also demand that the Court award them a penalty against Deere pursuant to 29 U.S.C. § 1132(c)(1)(B) for Deere's alleged failure to provide them with information about the Plan. (Docket No. 162 at 20).  Although Deere maintains that it complied with its disclosure obligations, to the extent there was a technical violation of ERISA Section 104, Deere indisputably substantially complied with applicable law.  Deere provided the then current Plan documents, SPDs, and

financial documents within 30 days of each of plaintiffs' requests for such documents.  (*See supra* at 30-31).  There is no evidence of bad faith, and plaintiffs have suffered no prejudice from the alleged failures.  *See Chestnut v. Montgomery*, 307 F.3d 698, 703-04 (8th Cir. 2002) (affirming district court's decision not to exercise discretion to award plaintiff penalty damages for defendant's technical violation, where it was undisputed that plaintiff did not receive the required notice, yet had suffered no harm because of it); *Wilson v. Moog Auto., Inc.*, 193 F. 3d 1004, 1010 (8th Cir. 1999) (finding that when defendant provided beneficiaries with pension plan documents only, though they requested welfare documents too, statutory damages were not necessary because there was no bad faith and the plaintiff was not prejudiced because he already possessed major plan documents); *Kerber*, 2009 WL 2710207, at *15 (where plaintiffs "suffered no prejudice" from the defendant's failure to produce documents and the defendant acted in good faith, court declined to levy statutory penalties against the defendant).

Additionally, plaintiffs already had access to many of the documents they sought through other means, including the SPDs that Deere produced to all Plan participants annually, the annual benefits statements that each Plan participant received, and the communications plaintiffs received in connection with their retirement from Deere, whether it was under a SERP or not.  *See Ames*, *supra* (no abuse of discretion in not imposing the statutory penalty where participants already had alternative access to the information contained in the requested plan documents).

**B.      Deere Did Not Violate ERISA's Claims Procedure Requirements.**

**1.      The Plan Administrator's Determination That Plaintiffs Had Not Made A Claim Under The Salaried Health Plan Was Neither Arbitrary Nor Capricious.**

The 2007 Salaried Health Plan and 2007 SPD specifically state that:

> the Plan Administrator or its delegate is authorized to finally determine appeals and interpret the terms of the Plan in its sole

discretion.  All decisions by the Plan Administrator or its delegate are final and finding on all parties.

(Docket No. 152-2 at Ex. A, Ex. B).

Where, as here, the Plan authorizes the Plan Administrator to determine claims eligibility in its sole discretion, courts "apply a deferential standard of review, considering whether the administrator abused its discretion." *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006), citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).  The abuse of discretion standard is "highly deferential" and "reflects the fact that courts are hesitant to interfere with the administration of a [plan]." *Maune v. IBEW, Local No. 1, Health & Welfare Fund*, 83 F.3d 959, 962-63 (8th Cir. 1996) (citation omitted).  A court will reverse a plan administrator's decision "only if it is arbitrary and capricious." *Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 896-97 (8th Cir. 2009) (citations omitted).  The decision must only be reasonable and "supported by substantial evidence." *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006).

As matter of law, Deere's determination that Plaintiffs have failed to make out "claims" under the Plans was reasonable and "supported by substantial evidence."  Department of Labor regulations interpreting ERISA Section 503, define a "claim for benefits" as:

a request for a plan benefit or benefits made by a claimant in accordance with the plan's reasonable procedure for filing benefit claims.  In the case of a group health plan, a claim for benefits includes any pre-service claims within the meaning of paragraph (m)(2) of this section and any post-service claims within the meaning of paragraph (m)(3) of this section.

29 C.F.R. 2560.503-1(e).[11]  The Salaried Health Plan and SPD specifically enumerate four types of claims that participants may pursue: (1) Urgent Care Claims; (2) Concurrent Care Claims; (3) Pre-Service Claims; and (4) Post-Service Claims.  (Docket No. 148 ¶¶ 45-46, 76; Docket No. 148-3 at 12).  As Deere repeatedly explained to plaintiffs, their allegations "relate to changes in the [Plan] design and not to the denial of any particular benefit.  It is clear, therefore, that the allegations do not meet the definition of any of the four available claims set forth above."  (Docket No. 148 ¶¶ 45-46, 76; Docket No. 148-3 at 7-8, 12-13; Docket No. 148-4 at 12-13).

Indeed, in *Ross v. Rail Car Am. Group Disability, Inc.*, 285 F.3d 735, 740 (8th Cir. 2001), the Eighth Circuit rejected contentions similar to plaintiffs' here.  In *Ross*, the plaintiff plan participant filed suit under ERISA Section 502(a)(1)(B), challenging the validity of amendments to the benefits he received under his employer's disability plan, which reduced both the amount and duration of the disability benefits.  *Id.* at 737.  He sought to reinstate the benefits under the previous plan.  *Id.* at 739-740.  The Eighth Circuit held that the plaintiff was not seeking to obtain benefits under the "terms of the plan" and, therefore, he did not have a claim "to recover benefits" under ERISA Section 502(a)(1)(B).

As in *Ross*, plaintiffs do not seek to make a claim for benefits under the current Plans; rather, they seek to reinstate retiree health benefits pursuant to the terms of a previous Plan no longer in existence.  (Docket No. 145 ¶ 1).  This is not a claim for benefits under ERISA.  Therefore, Deere had no obligation to provide them documents under ERISA Section 503.

---

[11] Paragraph (m)(2) defines a pre-service claim as "any claim for a benefit under a group health plan with respect to which the terms of the plan condition receipt of the benefit, in whole or in part, on approval of the benefit in advance of obtaining medical care."  29 C.F.R. 2560.503-1(m)(2).  Paragraph (m)(3) defines a post-service claim as "any claim for a benefit under a group health plan that is not a pre-service claim within the meaning of paragraph (m)(2) of this section."  29 C.F.R. 2560.503-1(m)(3).  Plaintiffs' alleged "claim" clearly does not fit into either category.

### 2.      Plaintiffs Were Afforded A Full And Fair Review Of Their "Claim."

Under Section 503, every employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(b).  Regulations interpreting Section 503 state that a claimant is afforded a full and fair review if he is provided "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. 2560-503(h)(2)(iii); *see also Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) (A "'full and fair review' includes the right to review all documents, records, and other information relevant to the claimant's claim for benefits, and the right to an appeal takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim").  A document is "relevant" if it:

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. 2560-503(m)(8).

Thus, assuming plaintiffs had a "claim for benefits," Deere would have been required to provide plaintiffs with those documents and internal guidelines that it used to deny their claim. Because the only documents relied upon by Deere in responding to plaintiffs' alleged claim for benefits were the 2007 Salaried Health Plan, Salaried Pension Plan and SPD, Deere complied with

Section 503 and the applicable federal regulations when it produced copies of the 2007 Salaried Health Plan, Salaried Pension Plan and SPDs to Grooms and plaintiffs' counsel.[12]   Furthermore, Deere explained the reasons for its determination that they had failed to assert a claim for benefits under either ERISA or the Plans – plaintiffs' purported claims for benefits related to changes in the design of the Salaried Health Plan, and not the denial of any particular benefit.   Thus, Deere complied with the requirements of Section 503.   *See supra* at 37-38; *see also Moore*, 458 F.3d at 436 (plan administrator's letter explaining in detail the factual basis for the denial of a participant's claim for benefits was "sufficient to fulfill the purposes of Section 1133").

### 3.   Plaintiffs Are Not Entitled To Damages In Any Event.

Even if plaintiffs were able to establish that Deere did not substantially comply with the full and fair review requirements of Section 503, plaintiffs are not entitled to damages.   The statutory penalties of ERISA Section 502(c), which are triggered by a plan administrator's failure to properly make a request for documents under Section 104(b)(4), are inapplicable to the claims and appeals procedure of Section 503.   *See Wilczynski v. Lumbermens Mutual Casualty Co.*, 93 F.3d 397, 206-08 (7th Cir. 1996) ("Because section 502(c) authorizes the imposition of sanctions only for the failures or refusals of the 'plan administrator,' and not those of the 'plan,' we hold that section 1132(c) cannot be used to impose civil liability for the violation of section 1133."); *see also Groves v. Modified Retirement Plan*, 803 F.2d 109, 113 (3rd Cir. 1986) (sanctions under Section 503 unavailable because "[f]irst, the obligations imposed by [Section 503]…are not imposed on plan administrators, and we believe that the personal liability required by [502(c)] can be imposed on plan administrators only if they fail to fulfill an obligation ERISA imposes directly upon them. Second, because [502(c)] authorizes sanctions only for failure to perform duties imposed by "this

---

[12] Plaintiffs' contention that Deere denied their claim based on "historical plan documents" (Docket No. 162 at 12), simply is incorrect.  Read as a whole, the letters denying the purported claims that plaintiffs' counsel made on behalf of Grooms and plaintiffs rely solely on language from the then-operative Plan documents.  *See* Docket No. 148-3 at 7-8, 12-13; Docket No. 148-4 at 12-13.

subchapter," we hold that sanctions may not be imposed on a plan administrator for his failure to fulfill obligations imposed only by regulations promulgated pursuant to ERISA").

Furthermore, Deere's purported failure to comply with the procedural requirements of Section 503 and the applicable regulations does not entitle plaintiffs to the injunctive and equitable relief sought in the Amended Complaint, because "denial of procedural rights does not of itself create a substantive right to benefits." *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1200 (8th Cir. 2002) (violation of ERISA's timely notice provision did not entitle plaintiff to substantive remedies absent a showing of substantive harm).

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Deere respectfully requests that the Court grant judgment in favor of Deere and against plaintiffs on Counts I through IV of plaintiffs Amended Complaint, and order such other and further relief in its favor as the Court deems appropriate under the circumstances.

Respectfully submitted,

DEERE & COMPANY, ET AL.

By:   */s/ Stephanie L. Sweitzer*

One of Their Attorneys

Dated:  September 10, 2009

Charles C. Jackson (*admitted pro hac vice*)
Sari M. Alamuddin (*admitted pro hac vice*)
Amy M. Foran (*admitted pro hac vice*)
Stephanie L. Sweitzer (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Tel: 312.324.1000
Fax: 312.324.1001
charles.jackson@morganlewis.com
salamuddin@morganlewis.com
aforan@morganlewis.com
ssweitzer@morganlewis.com


*/s/ Frank Harty*
*/s/ Debra L. Hulett*
*/s/ Angel A. West*
NYEMASTER, GOODE, WEST, HANSELL
    & O'BRIEN, PC
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Tel: 515.283.3100
Fax: 515.283.3108
fharty@nyemaster.com
dlhulett@nyemaster.com
aaw@nyemaster.com

James P. Walsh, Jr. (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
Tel:  609.919.6647
Fax:  609.919.6701
jwalsh@morganlewis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the foregoing Defendants' Trial Brief was filed September 10, 2009 with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Earl A. Payson
1313 Harrison Street
Davenport, IA 52803
Tel: 563.323.8054
Fax: 563.323.9112
eappc@aol.com

Daniel L. Bonnett
Susan J. Martin
Jennifer L. Kroll
Theresa L. Seifert
MARTIN & BONNETT, PLLC
3300 N. Central Ave., Suite 1720
Phoenix, AZ 85012
Tel: 602.240.6900
Fax: 602.240.2345
dbonnett@martinbonnett.com
smartin@martinbonnett.com
jkroll@martinbonnett.com
tseifert@martinbonnett.com

*/s/ Stephanie L. Sweitzer*

DB1/63544128.9